UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| HANAN ELATR KHASHOGGI,<br><br>        Plaintiff,<br><br>   v.<br><br>NSO GROUP TECHNOLOGIES LTD.<br>and Q CYBER TECHNOLOGIES LTD.,<br><br>        Defendants. | Case No. 1:23-cv-779-LMB-LRVVAED<br><br>Action Filed:   June 15, 2023 |

**DECLARATION OF YARON SHOHAT IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

I, Yaron Shohat, declare as follows:

1. I am a citizen and resident of Israel. I am currently the Chief Executive Officer of Defendant NSO Group Technologies Limited ("NSO"), and I was the Chief Operating Officer of NSO at all times relevant to this case. Defendant Q Cyber Technologies Limited ("Q Cyber" and, collectively with NSO, "Defendants") is NSO's sole director and majority shareholder.

2. I have personal knowledge of the facts set forth herein and, except as otherwise stated, could testify competently to each fact averred herein.

3. NSO is a technology company that designs and licenses technology to governments and their authorized agencies for national security and law enforcement purposes.

4. Defendants are incorporated and have their principal places of business in Israel. As a result, Hebrew is the primary language used in the ordinary course of company operations. NSO's internal communications and documents are generally prepared in Hebrew. Many of NSO's employees, however, have at least some proficiency in English and are capable of reading and writing (to varying degrees) in English.

5. As Israeli corporations, Defendants are subject to service of process in Israel. Defendants have no presence in any other country. Defendants do no business in Virginia and have no offices or employees in Virginia or elsewhere in the United States. Defendants have not performed any actions relevant to Plaintiff's lawsuit in Virginia, and they have not targeted any activities relevant to the lawsuit at Virginia. All of Defendants' employees with knowledge relevant to this lawsuit reside in Israel, and any documentary evidence relevant to the case is located in Israel.

6. Sales of Defendants' Pegasus technology are strictly monitored and regulated by the Government of Israel. The export of the technology is regulated under Israel's Defense Export Control Law ("DECL"), with which I am very familiar as NSO's CEO. A copy of the DECL is attached as **Exhibit A**.

7. To export its Pegasus technology, NSO is required to register with the Israeli Ministry of Defense ("MoD"). Under the DECL, the MoD is empowered to investigate NSO and

its business, refuse or cancel NSO's registration, or deny NSO's license, taking into account several factors, including the intended use of NSO's Pegasus technology and the identity of NSO's customers. The MoD can and does ask NSO to provide documentation about its customers and prospective customers and the intended uses of NSO's Pegasus technology by NSO's customers and potential customers. The MoD requires this documentation from NSO for each export of NSO's technology.

8. NSO's contracts require Pegasus end-user customers to demonstrate that they are a government or an authorized agency for national security and law enforcement purposes of a government and to provide any other necessary documentation for approval by the MoD.

9. The MoD requires NSO to provide it with signed certificates from the end-users of NSO's Pegasus technology, in which the end-users declare that NSO's Pegasus technology will be used only for prevention and investigation of terrorism and criminal activity.

10. NSO markets and licenses its Pegasus technology exclusively to sovereign governments and authorized agencies for national security and law enforcement purposes of governments and does so only after receiving the necessary export control licenses from the MoD. NSO does not market or sell its Pegasus technology for use by any private entities.

11. At all times relevant to this case, Defendants did not operate NSO's Pegasus technology. Instead, NSO marketed and licensed the Pegasus technology to its sovereign government customers, which then operated the Pegasus technology themselves, to advance their own sovereign interests of fighting terrorism and serious crime. Defendants' role was limited to NSO providing advice and technical support to assist customers in setting up—not operating—the Pegasus technology.[1] When Defendants provided those support services, they did so entirely at the direction of their government customers, and Defendants followed those directions completely. Defendants' operation of the Pegasus technology NSO has licensed to sovereign governments and

---

[1] Defendants do not participate in any NSO customer's installation of the Pegasus technology on any device.

2

agencies for national security and law enforcement purposes is also prohibited under each export control license NSO has been granted. Each of the licenses NSO has been granted provides that operational use or ongoing operation of Pegasus by NSO employees (or their subcontractors) is prohibited, and that operation of Pegasus by NSO employees (or their subcontractors) is permitted only for demonstration purposes and on devices owned by NSO. Each export control license NSO has been granted further requires that NSO's remote access to Pegasus technology licensed to a customer is permitted solely for purposes of maintenance (which is not related to operation of Pegasus).

12. NSO also takes into account U.S. and European Union export control restrictions. NSO conducts due diligence potential customers, including examining publicly available information, evaluating questionnaires, and considering the potential customer's record of respecting rule-of-law concerns. Government customers must provide due diligence materials before receiving NSO's Pegasus technology.

13. NSO's Pegasus technology also has technical safeguards, such as general and customer-specific geographic limitations. One of the limitations relevant to this case is that NSO's Pegasus technology cannot be used against U.S. mobile phone numbers. Another such limitation is that the Pegasus technology cannot be used against a device within the geographic bounds of the United States.

14. Plaintiffs allege that Defendants used Pegasus to monitor journalists, human rights activists, political dissidents, diplomats, and other senior government officials. That is false. At all times relevant to this case, Defendants did not monitor anyone, and Defendants prohibited their customers from using the technology for purposes other than fighting terrorism and serious crime, by contractual prohibitions against such behavior and required end-user certificates signed by the customer. If a government ever misused NSO's Pegasus technology to monitor users of mobile devices for purposes other than fighting terrorism and serious crime, that would be a violation of that government's contract with NSO. If Defendants suspected any improper use of Defendants' Pegasus technology outside these parameters, service to that customer would be suspended pending investigation. If investigation revealed such ongoing misuse, that customer would be

terminated. NSO does not collect or store any information collected by its customers.

15. At all times relevant to this case, because NSO's government customers used Defendants' technology to investigate and prevent terrorism and crime, discovery into Defendants' customers' use of the technology would require sovereign governments to reveal sensitive information about their national-security, intelligence, and law enforcement operations.

16. If any of NSO's government customers have witnesses or evidence relevant to this lawsuit, those witnesses and that evidence would be located outside of the United States.

17. On June 8, 2023, NSO applied to the Israeli Ministry of Defense ("MoD") for a license to export information relating to Pegasus to Plaintiffs, and their counsel, and the Court. To date, the MoD has not granted NSO's requested license.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed 28 September, 2023, at _HERZLIYA_, Israel.

_____
YARON SHOHAT

4