**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

HANAN ELATR KHASHOGGI,

      Plaintiff,

  v.

NSO GROUP TECHNOLOGIES LTD.
and Q CYBER TECHNOLOGIES LTD.,

      Defendants.

Case No. 1:23-cv-779-LMB-LRVVAED

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANTS' MOTION TO**
**DISMISS AND MEMORANDUM OF**
**POINTS AND AUTHORITIES**

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 1

ARGUMENT ...................................................................................................................... 3

   I.   This Court Has Authority To Adjudicate this Case ..................................................... 3

     A.   This Court Has Personal Jurisdiction over NSO ............................................... 3

     B. NSO's Extraterritoriality Arguments Are Unavailing ....................................... 6

     C. NSO Is Not Shielded by Derivative Foreign Sovereign Immunity ................... 6

     D. NSO is Not Shielded by the Act of State Doctrine ............................................ 9

   II.   The Complaint Should Not Be Dismissed on *Forum Non Conveniens* Grounds .......... 11

     A. NSO Has Failed To Show that Israel Is an Available or Adequate Alternative Forum ... 12

     B. The Private Factors Do Not Favor Dismissal ................................................... 13

     C.   The Public Factors Counsel Against Dismissal .......................................... 18

   III.   The Complaint Has Adequately Stated Claims Against NSO ..................................... 19

     A.   Mrs. Khashoggi Has Stated a CFAA Claim ................................................. 19

     B. Mrs. Khashoggi Has Stated a VCCA Claim ................................................... 27

     C. Plaintiff Has Stated a Claim for Intentional Infliction of Emotional Distress ................. 28

     D. Mrs. Khashoggi Has Sufficiently Alleged Negligence-Based Claims ............................ 29

     E. Plaintiff Has Adequately Alleged Trespass to Chattels ................................... 30

CONCLUSION.................................................................................................................. 30

i

# TABLE OF AUTHORITIES

Cases

*A.V. v. iParadigms, LLC*,
    562 F.3d 630 (4th Cir. 2009) .......................................................................................... 25

*Adventure Commc'ns, Inc. v. Kentucky Registry of Election Fin.*,
    191 F.3d 429 (4th Cir. 1999) ........................................................................................... 6

*Al Shimari v. CACI Premier Tech., Inc.*,
    324 F. Supp. 3d 668 (E.D. Va. 2018) .............................................................................. 24

*All. Tech. Grp., LLC v. Achieve 1, LLC*,
    2013 U.S. Dist. LEXIS 4708 (E.D. Va. Jan. 11, 2013) ................................................... 27

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*,
    293 F.3d 707 (4th Cir. 2002) ........................................................................................... 4

*Am. Online, Inc. v. IMS*,
    24 F. Supp. 2d 548 (E.D. Va. 1998) ............................................................................... 30

*American Dredging Co. v. Miller*,
    510 U.S. 443 (1994).......................................................................................................... 13

*Anderson v. Fluor Intercontinental, Inc.*,
    2021 U.S. Dist. LEXIS 45526 (E.D. Va. Jan. 4, 2021) ................................................... 20

*Animators at L., Inc. v. Capital Legal Sols., LLC*,
    786 F. Supp. 2d 1114 (E.D. Va. 2011) ........................................................................... 26

*Apple Inc., v. NSO Grp. Techs. Ltd.*,
    No. 3:21-cv-09078-JD (N.D. Cal. Nov. 23, 2021) ......................................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................... 21

*Attkisson v. Holder*,
    2017 U.S. Dist. LEXIS 181815 (E.D. Va. Nov. 1, 2017)................................................. 22

*Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*,
    283 F.3d 208 (4th Cir. 2002). .......................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................... 21

*Boyd v. CEVA Freight, LLC*,
   2013 U.S. Dist. LEXIS 169514 (E.D. Va. Nov. 26, 2013) ................................. 23

*Broidy Capital Mgmt. LLC v. Muzin*,
   12 F.4th 789 (D.C. Cir. 2021) ......................................................................... 8

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ................................................................................ 3, 5

*Butters v. Vance Int'l, Inc.*,
   225 F.3d 462 (4th Cir. 2000) ..................................................................... 7, 8

*Carter v. Trafalgar Tours, Ltd.*,
   704 F. Supp. 673 (W.D. Va. 1989) ................................................................. 11

*Charles v. Sacoolas*,
   2021 U.S. Dist. LEXIS 214762 (E.D. Va. Feb. 16, 2021) ................................. 13

*Combs v. Bakker*,
   886 F.2d 673 (4th Cir. 1989)) ....................................................................... 3

*Cor Sec. Holdings v. Bank of Cal.*,
   2018 U.S. Dist. LEXIS 237262 (C.D. Cal. Feb. 12, 2018) ............................... 23

*Corallo v. NSO Grp. Techs. Ltd.*,
   No. 3:22-cv-5229 (N.D. Cal. Sep. 13, 2022) ................................................. 18

*Ctr. L. & Consulting, LLC v. Axiom Res. Mgmt.*,
   456 F. Supp. 3d 765 (E.D. Va. 2020) ............................................................ 27

*Cvent, Inc. v. Eventbrite, Inc.*,
   739 F. Supp. 2d 927 (E.D. Va. 2010) ............................................................ 20

*Dada v. NSO Grp. Techs.*,
   No. 3:22-cv-07513-WHA (N.D. Cal. Dec. 16, 2022) ....................................... 18

*De Sole v. United States*,
   947 F.2d 1169 (4th Cir.1991) ....................................................................... 23

*DiFederico v. Marriott Int'l, Inc.*,
   714 F.3d 796 (4th Cir. 2013) ................................................................... 12, 16

*Durden v. United States*,
   736 F.3d 296 (4th Cir. 2013) ....................................................................... 29

iii

*Eckert Int'l, Inc. v. Gov't of Sov. Dem. Repub. of Fiji*,
    834 F. Supp. 167 (E.D. Va. 1993) ............................................................... 9, 10

*Facebook, Inc. v. Power Ventures, Inc.*,
    844 F.3d 1058 (9th Cir. 2016) ..................................................................... 24

*Faulkner v. Dillon*,
    92 F. Supp. 3d 493 (W.D. Va. 2015)*;* ........................................................ 29

*Federated It v. Anthony*,
    2020 U.S. Dist. LEXIS 150555, (E.D. Va. May 12, 2020) ........................... 27

*Galustian v. Peter*,
    591 F.3d 724 (4th Cir. 2010) ...................................................................... 12

*Gates Learjet Corp. v. Jensen*,
    743 F.2d 1325 (9th Cir. 1984) .................................................................... 19

*Good 'Nuff Garage, LLC v. McCulley*,
    2022 U.S. Dist. LEXIS 174474 (E.D. Va. Sep. 26, 2022)............................. 21

*Government of the Dominican Republic v. AES Corp.*, 4
    66 F. Supp. 2d 680 (E.D. Va. 2006) ............................................................ 9

*Graduate Mgmt. Admission Council v. Raju*,
    241 F. Supp. 2d 589 (E.D. Va. 2003) ........................................................... 6

*Hains v. Adams*,
    2019 U.S. Dist. LEXIS 196113 (E.D. Va. Nov. 12, 2019)............................ 26

*Hately v. Watts*,
    917 F.3d 770, (4th Cir. 2019) ..................................................................... 27

*Holley v. CVS Caremark Corp.*,
    2015 U.S. Dist. LEXIS 101522 (W.D. Va. Aug. 3, 2016)............................. 27

*Jiali Tang v. Synutra Int'l, Inc.*,
    656 F.3d 242 (4th Cir. 2011) ...................................................................... 12

*Joe N. Pratt Ins. v. Doane*,
    2008 U.S. Dist. LEXIS 22448 (S.D. Tex. Mar. 20, 2008).............................. 23

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984).................................................................................... 18

*Liberty Mut. Fire Ins. Co. v. Menozzi Luigi*,
    92 F. Supp. 3d 435 (E.D. Va. 2015) ............................................................ 5

*Marsh v. Curran*,
    362 F. Supp. 3d 320 (E.D. Va. 2019) .......................................................... 21

*McKesson Corp. v. Islamic Republic of Iran*,
    672 F.3d 1066 (D.C. Cir. 2012). ................................................................. 9

*MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*,
    2010 U.S. Dist. LEXIS 70191 (W.D. Va. July 13, 2010) ............................ 14

*Microsoft Corp. v. Doe*,
    2018 U.S. Dist. LEXIS 202016 (E.D. Va. Oct. 31, 2018) ............................ 20

*Microsoft Corp. v. John Does 1-8*,
    2015 U.S. Dist. LEXIS 110145 (E.D. Va. July 20, 2015) ............................ 30

*Ning Xianhua v. Oath Holdings, Inc.*,
    536 F. Supp. 3d 535 (N.D. Cal. 2021). ....................................................... 10

*Phreesia, Inc. v. Certify Glob., Inc.*,
    2022 U.S. Dist. LEXIS 56856 (D. Md. Mar. 29, 2022) ............................... 24

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ............................................................................ 11, 18

*Plantan v. Smith*,
    2023 U.S. Dist. LEXIS 82457 (E.D. Va. May 10, 2023) ............................ 28

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) .................................................................. 15

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ............................................................................... 7, 8

*SAS Inst., Inc. v. World Programming Ltd.*,
    468 Fed. Appx. 264 (4th Cir. 2012) .......................................................... 11

*Satterfield v. Wells Fargo Bank*,
    2023 U.S. Dist. LEXIS 85081 (E.D. Va. May 15, 2023) ......................... 29, 30

*Shaw v. Toshiba Am. Info. Sys.*,
    91 F. Supp. 2d 926 (E.D. Tex. 1999) ......................................................... 22

*Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc.*,
    119 F. Supp. 2d 1121 (W.D. Wash. 2000)...................................................................... 25

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)............................................................................................. 11, 13

*Societe Internationale Pour Participations Industrielles et Commerciales, S. A. v. Rogers*,
    357 U.S. 197 (1958)...................................................................................................... 14

*Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*,
    482 U.S. 522 (1987)...................................................................................................... 15

*State Analysis Inc. v. Am. Fin. Services Assoc.*,
    621 F. Supp. 2d 309 (E.D. Va. 2009) ........................................................................... 20

*Studco Bldg. Sys. United States, LLC v. 1st Advantage Fed. Credit Union*,
    509 F. Supp. 3d 560 (E.D. Va. 2020) ........................................................................... 27

*Synthes, Inc. v. Emerge Med., Inc.*,
    2012 U.S. Dist. LEXIS 134886 (E.D. Pa. Sep. 19, 2012) .............................................. 23

*Tahan v. Hodgson*,
    662 F.2d 862 (D.C. Cir. 1981) ...................................................................................... 17

*Tracfone Wireless, Inc. v. Simply Wireless, Inc.*,
    229 F. Supp. 3d 1284 (S.D. Fla. 2016) ......................................................................... 23

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*,
    682 F.3d 292 (4th Cir. 2012) .......................................................................................... 5

*U.S. v. Moussaoui*,
    2002 U.S. Dist. Lexis 29077 (E.D. Va. Sept. 26, 2002)................................................. 19

*UMG Recs., Inc. v. Kurbanov*,
    963 F.3d 344 (4th Cir. 2020) ..................................................................................... 3, 4

*United States v. Yücel*,
    97 F. Supp. 3d 413 (S.D.N.Y. 2015)............................................................................. 25

*Velasco v. Gov't of Indonesia*,
    370 F.3d 392 (4th Cir. 2004) .......................................................................................... 7

*Verizon Online Servs., Inc. v. Ralsky*,
  203 F. Supp. 2d 601 (E.D. Va. 2002) ....................................................................... 3, 4, 5

*W.S. Kirkpatrick & Co., Inc. v. Env't Tectonics Corp., Int'l*,
  493 U.S. 400 (1990) ...................................................................................................... 10

*Warfaa v. Ali*,
  33 F. Supp. 3d 653 (E.D. Va. 2014) ....................................................................... 10, 11

*Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*,
  668 F. Supp. 2d 749 (E.D. Va. 2009) .............................................................................. 6

*WEC Carolina Energy Solutions LLC v. Miller*,
  687 F.3d 199, (4th Cir. 2012) ....................................................................................... 24

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
  17 F.4th 930 (9th Cir. 2021) ............................................................................... 7, 8, 18

*Whatsapp Inc. v. NSO Grp. Techs. Ltd.*,
  472 F. Supp. 3d 649 (N.D. Cal. 2020). ................................................................ 4, 6, 22

*Williams v. Agency, Inc.*,
  997 F. Supp. 2d 409 (E.D. Va. 2014) ........................................................................... 28

*Williams v. AM Lapomarda*,
  No. 3:19-cv-631, U.S. Dist. LEXIS 118502 (E.D. Va. July 6, 2020) ............................ 28

*Wofse v. Horn*,
  523 F. Supp. 3d 122 (D. Mass. 2021). .......................................................................... 26

*Womack v. Eldridge*,
  210 S.E.2d 145 (Va. 1974) ............................................................................................ 28

*Yousuf v. Samantar*,
  699 F.3d 763 (4th Cir. 2012) .............................................................................. 7, 8, 10, 11

S<small>TATUTES</small>

18 U.S.C. § 1030 ............................................................................................ passim

18 U.S.C. § 1603(b) .................................................................................................. 8

28 U.S.C. §§ 1602-1611 ........................................................................................... 7

Va. Code Ann. § 18.2-152.1 *et seq.* (2023) ........................................................... 18

Va. Code Ann. § 18.2-152.12(A) ............................................................................ 27

Va. Code Ann. § 18.2-152.4(2)(6) (2023) .............................................................. 27

R<small>ULES</small>

Advisory Comm.'s Note to Fed. R. Civ. P. 4(k)(2) .................................................. 6

Fed. R. Civ. P. 37(d)(1)(A)(i) ................................................................................. 16

## INTRODUCTION

Defendants NSO Group Technologies Limited and Q Cyber Technologies Limited (collectively "NSO") are cyber mercenaries that create, supply, and maintain a highly sophisticated and malicious spyware system for authoritarian regimes. NSO claims to be fighting terrorism and criminal activity, but instead has supported and engaged in the very acts it purports to condemn. Through this framework, NSO unleashed its malicious "Pegasus" spyware, intentionally targeting Hanan Khashoggi ("Plaintiff" or "Mrs. Khashoggi") in Virginia, where she was living with her husband, Washington Post journalist and activist, Jamal Khashoggi. By violating Mrs. Khashoggi's privacy in one of the most pervasive fashions imaginable, and by contributing to the death of her husband, NSO caused Mrs. Khashoggi unthinkable harm. Compl. ¶ 129. Thus, Mrs. Khashoggi is entitled to seek redress in this Court for the injuries she sustained as a result of that unlawful conduct, and NSO's Motion to Dismiss, Dkt. 26 ("Mot."), should be denied.

## FACTUAL BACKGROUND

NSO has profited by supplying authoritarian governments known for perpetrating human rights abuses with Pegasus, the world's most powerful, sophisticated, and infamous spyware. Compl. ¶ 39. Pegasus is designed to be undetectable—it evades traditional security measures and is installed on a target's electronic device without their knowledge or consent. Compl. ¶ 40. The version of Pegasus installed on Mrs. Khashoggi's devices was in high demand due to its unique remote "zero click" feature. Compl. ¶ 41. Most available spyware requires some interaction by the target, such as clicking a link or opening a file. Compl. ¶ 41. With Pegasus, NSO needed only the target's phone number to access every piece of data stored on the phone. Compl. ¶ 41.

Critically, NSO falsely claims that it offers no assistance to its clients after the sale of its spyware is complete. To the contrary, NSO configures and maintains the infrastructure that

supports the operation of Pegasus, trains clients in its use, and assists those clients throughout every stage of the deployment and operation of the spyware. Compl. ¶¶ 46-48, 66-71, 77; Compl. Ex. 1, at 21, 38, 41. NSO gets an immediate report of every phone call that is hacked anywhere in the world, can identify any abuses of its cyber weapon, and can terminate customers who misuse it. Compl. ¶¶ 46, 60. Despite the ability to prevent abuses by the authoritarian regimes with which it does business, NSO has repeatedly refused to do so. Compl. ¶ 60.

In November 2021, a forensic investigation performed by Citizen Lab concluded that both of Mrs. Khashoggi's phones were infected with Pegasus. Compl. ¶ 42; Declaration of Bill Marczak (Oct. 12, 2023) ("Marczak Decl.") ¶ 8. The infiltration provided NSO and its clients with access to all information stored on Mrs. Khashoggi's devices. Compl. ¶ 42. The infiltration also provided NSO and its authoritarian partners the ability to activate the cameras and microphones on Mrs. Khashoggi's phones without her knowledge, turning her devices into pocket spies, eavesdropping in real time on her most intimate moments and conversations. Compl. ¶ 42.

NSO has come under fire in the U.S. legal system, *see infra.* at 18, and in the public eye, as well as earning condemnation from the U.S. Government, the United Nations, and multiple human rights groups for its ongoing threat to the United States' national security, international human rights violations infringing upon the rights of activists, journalists, and innocent victims, and violations of U.S. law. Compl. ¶¶ 3, 31, 43-44.

As a result of being targeted by NSO and its clients as one of those innocent victims, Hanan Khashoggi's life has been shattered. Compl. ¶ 127. Her private conversations in the intimacy of her home and marriage were invaded by NSO, and the information obtained from her devices was ultimately used to aid in the murder of her husband. Compl. ¶ 129. She was forced to leave her job of over 20 years, was detained, interrogated, and held in captivity for more than two months, and

has been unable to see her family in the Middle East for years. Compl. ¶¶ 130-131. She has been forced to live in a state of constant hyper-vigilance, unable to safely participate in social activities, and is constantly looking over her shoulder. Compl. ¶ 132. The intimidation by NSO and its authoritarian clients and the threat of danger to her life has caused Mrs. Khashoggi to seek political asylum in the United States. Compl. ¶ 133.

## ARGUMENT

### I.     This Court Has Authority To Adjudicate this Case

#### A.  This Court Has Personal Jurisdiction over NSO

This court has specific personal jurisdiction over NSO. Plaintiff need only make a "*prima facie* showing of a sufficient jurisdictional basis," and "the court must construe all relevant allegations in the light most favorable to the plaintiff and draw the most favorable inferences for the existence of jurisdiction." *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 609 (E.D. Va. 2002) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

The Court's exercise of personal jurisdiction over NSO is proper under Rule 4(k)(1) because NSO purposefully availed itself of the forum state by "creat[ing] a substantial connection" with Virginia and "purposefully direct[ing]" surveillance activities towards Mrs. Khashoggi's devices while she resided in Virginia.[1] *UMG Recs., Inc. v. Kurbanov*, 963 F.3d 344, 353 (4th Cir. 2020) (citations omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Contrary to NSO's insistence otherwise, the Complaint and publicly available information echo the Northern District of California's finding that "the boundary between [NSO's] conduct and their

---

[1] NSO and its clients specifically targeted Mrs. Khashoggi to gather information about Jamal Khashoggi, a well-known activist and Washington Post journalist who had been critical of Saudi Arabia. They knew the couple was living together in Virgnia at the time they targeted her. Compl. ¶¶ 5, 54-64, 96-108.

clients' conduct is not clearly delineated." *Whatsapp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 670 (N.D. Cal. 2020). Mrs. Khashoggi alleges NSO "utilized . . . [her] personal devices" on an ongoing basis and "caused tortious injury to the Plaintiff in Virginia when they infiltrated and continuously monitored Plaintiff through her devices." Compl. ¶¶ 36, 42.[2] Indeed, "NSO Group laid every intimate detail of her life bare," including her messages, medical and financial information, and private conversations in her Virginia home. Compl. ¶ 47. Despite the unique features of NSO's Pegasus technology, this Court and the Fourth Circuit have already found analogous conduct to support exercising specific personal jurisdiction. *See UMG Recs., Inc.*, 963 F.3d at 354 (defendant collected Virginia residents' data); *Verizon Online Servs.*, 203 F. Supp. 2d. at 617 ("employ[ing] an arsenal of fraudulent techniques to avoid detection and continue" engaging in tortious digital conduct). Moreover, the "brunt of the harm suffered" by Mrs. Khashoggi was in Virginia, where she lived for the majority of the time her devices were accessed and monitored. *Verizon Online Servs.*, 203 F. Supp. 2d at 617; *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 714 (4th Cir. 2002). NSO's conduct purposefully directed at the forum predicates the claims themselves—*i.e.*, Mrs. Khashoggi's claims arise out of NSO's contacts with Virginia, thus satisfying the first two prongs of the due process analysis.

Further, NSO has not carried its burden in presenting a compelling case that jurisdiction in

---

[2] NSO's claim that its spyware does not work in North America or the United States is disingenuous. It has been widely reported that this technology could work here prior to President Biden's executive order blacklisting NSO and its Pegasus technology. *See* Marczak Declaration ¶¶ 15-17; *see also* Mark Mazetti and Ronen Bergman, "A Front Company and a Fake Identity: How the U.S. Came to Use Spyware It was Trying to Kill," *The New York Times* (Apr. 2, 2023) https://www.nytimes.com/2023/04/02/us/politics/nso-contract-us-spy.html; Bill Marczak, John Scott-Railton, *et al.*, https://www.nytimes.com/2023/04/02/us/politics/nso-contract-us-spy.html; Bill Marczak, John Scott-Railton, *et al.*, "The Kingdom Came to Canada," *Citizen Lab* (Oct. 1, 2018) https://citizenlab.ca/2018/10/the-kingdom-came-to-canada-how-saudi-linked-digital-espionage-reached-canadian-soil/.

Virginia would be unreasonable. *See Burger King Corp.*, 471 U.S. at 477 (Personal jurisdiction factors include "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'"). In targeting its surveillance conduct towards a Virginia resident, NSO "should have been aware of the possibility of being sued where their [technology] inflicted the greatest injury to [Plaintiff]." *Verizon Online Servs.*, 203 F. Supp. 2d at 621. Crucially, Virginia has a strong interest in resolving this dispute, *id.*, as declining to assert jurisdiction would grant hackers who have invaded the privacy of Virginia residents "*carte blanche* to [surveil] with impunity," *Id.* at 612.[3] And of course, as a Virginia resident, Mrs. Khashoggi has a "substantial interest" in vindicating her rights in this court. *Tire Eng'g & Distrib.*, 682 F.3d at 305.

       ***This Court Has Personal Jurisdiction Under 4(k)(2).*** Alternatively, the court has personal jurisdiction over NSO under Rule 4(k)(2) because this case arises under federal law, NSO is not subject to personal jurisdiction in any other state, and NSO's "contacts with the United States as a whole" are sufficient to satisfy due process requirements. *See Base Metal Trading v. OJSC Novokuznetsky Aluminum Factory*, 283 F.3d 208, 215 (4th Cir. 2002). ***First***, Mrs. Khashoggi's claims arise under federal law: The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. Compl. ¶¶ 33, 134-51; Advisory Comm.'s Note to Fed. R. Civ. P. 4(k)(2). ***Second***, NSO does not

---

[3] While NSO argues it will be burdened by litigating in Virginia, that burden is mitigated by its "ability to secure competent Virginia counsel," and "Plaintiff faces an equal burden" if the action were litigated in Israel. *Liberty Mut. Fire Ins. Co. v. Menozzi Luigi*, 92 F. Supp. 3d 435, 445 (E.D. Va. 2015); *see also Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 304 (4th Cir. 2012) (noting that a United Arab Emirates-based company's disadvantage litigating in Virginia was "not dispositive").

allege that it is subject to the general jurisdiction of a court in any other state, which federal courts typically treat as sufficient to prove the second prong. *See Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 599 (E.D. Va. 2003) (describing the defendant identifying a suitable forum state as the "pragmatic" approach). **Third**, NSO's contacts with the United States as a whole are sufficient to satisfy the due process minimum contacts analysis. Compl. ¶¶ 30-31; *Whatsapp*, 472 F. Supp. 3d at 670 (explaining NSO's hacking activities that have impacted United States-based companies and their servers in California); *see, e.g.*, *Graduate Mgmt. Admission Council*, 241 F. Supp. 2d at 597-99.

### B. NSO's Extraterritoriality Arguments Are Unavailing

NSO's brief argument, Mot. at 27, that Mrs. Khashoggi's state law claims "would involve an impermissible extraterritorial application of Virginia law" is conclusory, ignores the Complaint's allegations of conduct occurring within Virginia, and does not reflect Virginia law. Further, the cases cited by NSO are inapposite and do not support its position or argument.[4] The conduct directed at Virginia by NSO both supports exercising personal jurisdiction over NSO and illuminates why Virginia law applies in this case. *See Adventure Commc'ns, Inc. v. Kentucky Registry of Election Fin.*, 191 F.3d 429, 438 (4th Cir. 1999) (defendant's contacts with Kentucky and Kentucky's interest in applying its own statutes were sufficient to satisfy due process in the extraterritorial application context). For the same reasons the Court has personal jurisdiction in this case, issues of extraterritoriality do not apply.

### C. NSO Is Not Shielded by Derivative Foreign Sovereign Immunity

NSO concedes that the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-

---

[4] NSO's reliance on *Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*, 668 F. Supp. 2d 749, 752-54 (E.D. Va. 2009) is misplaced. In that case the Eastern District of Virginia applied Texas law. Here, Virginia law applies because all relevant conduct occurred in Virginia.

1611, does not protect it from suit because "the FSIA immunizes only foreign states[.]" Mot. at 7. Instead, NSO claims it is shielded from suit by common-law foreign sovereign immunity. *Id.* It is not. In *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930 (9th Cir. 2021), *cert. denied*, 143 S. Ct. 562 (2023), the Ninth Circuit addressed and rejected this exact argument by NSO. *See id.* at 940 ("NSO is not entitled to the protection of foreign sovereign immunity."). Since the FSIA does not apply, *WhatsApp* explains "There is no need to analyze whether NSO is entitled to immunity under the common law and inquire how the State Department would resolve this case . . . The proper analysis begins and ends with the FSIA. . . ." *Id.*[5] The same result should apply here.

In arguing that it is shielded by common law foreign sovereign immunity, NSO relies on cases addressing immunity of foreign government **officials**. *See* Mot. at 7 (citing, *inter alia*, *Velasco v. Gov't of Indonesia*, 370 F.3d 392 (4th Cir. 2004); *Yousuf v. Samantar*, 699 F.3d 763 (4th Cir. 2012) ("*Yousuf IV*")). These cases are inapposite. While the FSIA is silent on immunity of foreign officials, it expressly addresses foreign entities by extending immunity **only** to those controlled by the foreign state. 18 U.S.C. § 1603(b). Since the FSIA expressly addresses foreign entity immunity and excludes privately-owned companies, it precludes NSO from claiming common law foreign sovereign immunity. *WhatsApp*, 17 F.4th at 933 (citing *Samantar v. Yousuf*, 560 U.S. 305, 315-16 (2010)).

Appearing to recognize this, NSO falls back to arguing that private entities acting on behalf of foreign governments are entitled to derivative sovereign immunity under *Butters v. Vance Int'l, Inc.*, 225 F.3d 462 (4th Cir. 2000). Mot. at 7. This argument, too, fails. *Butters* addressed an American company's claim to derivative sovereign immunity for its acts to provide security for a

---

[5] *See also WhatsApp*, 17 F.4th at 940 ("Nor is it necessary to explain that neither the State Department nor any court has ever applied foreign official immunity to a foreign private corporation under the common law, although this is a compelling fact indeed.").

foreign official in the United States under the foreign state's orders. *See id.* at 463. The Fourth Circuit held that the American company acting in the United States was "entitled to derivative immunity **under the FSIA**." *Id.* at 466 (emphasis added).

This holding does not apply to NSO here for at least three reasons. **First**, NSO is not an American company. *See WhatsApp*, 17 F.4th at 939 n.6 ("*Butters* did not discuss whether this common-law doctrine also extends to *foreign* contractors acting on behalf of foreign states.") (emphasis in original). **Second**, NSO's actions at issue were of a commercial nature and not directed or controlled by a foreign state. *Compare* Mot. at 8 (citing Plaintiff's allegation that "NSO 'assists' its clients"); *with Butters*, 225 F.3d at 465 (defendant "was 'acting under the direct military orders of Colonel Mohammed'"); *see also Broidy Capital Mgmt. LLC v. Muzin*, 12 F.4th 789, 803 (D.C. Cir. 2021) ("But the complaint simply does not allege Qatar 'specifically ordered' the defendants to participate in a scheme to hack and distribute Broidy's private emails, as the defendants themselves concede is necessary to support their theory of derivative immunity."). **Third**, *Butters*'s ruling that a private company is entitled to derivative immunity "under the FSIA," 225 F.3d at 466, is of doubtful continuing force after the Supreme Court later held that the FSIA does not apply to individuals acting on behalf of foreign states, *Samantar*, 560 U.S. at 319; *see Broidy*, 12 F.4th at 802; *WhatsApp*, 17 F.4th at 939 n.6 (quoting *Republic of ArgentinaML Cap., Ltd.*, 573 U.S. 134, 142 (2014)). For each of these reasons, *Butters* does not apply.[6] NSO's

---

[6] If the Court looks any further, the United States Government's stated views also weigh strongly against finding common law derivative sovereign immunity for NSO. *See generally Yousuf IV*, 699 F.3d at 773 (giving considerable weight to State Department's views on claim of foreign official immunity). Here, the Government steadfastly denies the underpinnings for finding immunity: "[T]he State Department has not filed a suggestion of immunity for NSO, and there are no established principles accepted by the State Department affirmatively recognizing a conduct-based immunity for a private entity acting as an agent of a foreign state." Brief for the United States as Amicus Curiae, *NSO Grp. v. WhatsApp, Inc.*, No. 21-1338 (U.S. Nov. 21, 2021) at 13; *id.* at 14 ("[N]o foreign government has requested that the State Department recognize an immunity of NSO

arguments for dismissal based on derivative foreign sovereign immunity thus should be rejected.

### D. NSO is Not Shielded by the Act of State Doctrine

NSO fares no better in raising the act of state doctrine. The "act of state doctrine applies when: (1) the act undertaken by the foreign state is public, and (2) the foreign state completes the act within its territory." *Gov't of the Dom. Rep. v. AES Corp.*, 466 F. Supp. 2d 680, 694 (E.D. Va. 2006). NSO does not and cannot satisfy either of these requirements.

*First*, NSO's actions as a private company do not constitute public acts of a sovereign. A "public" or "official" action refers to "conduct that is by nature distinctly sovereign, *i.e.*, conduct that cannot be undertaken by a private individual or entity." *McKesson Corp. v. Islamic Republic of Iran*, 672 F.3d 1066, 1073 (D.C. Cir. 2012). Paradigmatic public acts occur where a foreign government acts to "pass a law, issue an edict or decree, or engage in formal governmental action . . . for the benefit of the . . . public." *Id.* at 1074. A foreign state's "[c]ontracting with a private consultant is a commercial rather than a governmental act," for which "the act of state doctrine's public act requirement is not met." *Eckert Int'l, Inc. v. Gov't of Sov. Dem. Repub. of Fiji*, 834 F. Supp. 167, 172 (E.D. Va. 1993). NSO's provision of goods and services through private contracts with foreign sovereigns to surveil persons in the United States does not constitute public acts.

*Second*, even if these were public acts, they were not completed within the foreign states' territories. Mrs. Khashoggi's allegations make clear that surveillance in the United States, ***not*** Saudi Arabia or the UAE, was critical to the planning, capture, and assassination of Jamal

---

from this suit on the rationale that NSO was acting as its agent, or on any other basis."); *see also Addition of Certain Entities to the Entity List*, 86 Fed. Reg. 60759 (Nov. 4, 2021) (codified at 15 C.F.R. 744) (adding NSO to list of foreign entities deemed to pose national security risk based on evidence that NSO "developed and supplied spyware to foreign governments that used this tool to maliciously target government officials, journalists, businesspeople, activists, academic, and embassy workers.").

Khashoggi. *See* Compl. ¶¶ 113-114. This, too, precludes the act of state doctrine's application. *See, e.g.*, *Eckert*, 834 F. Supp. at 172.

The act of state doctrine also does not apply because Mrs. Khashoggi's claims do not require the Court "to declare invalid the official act of a foreign sovereign . . . ." *W.S. Kirkpatrick & Co., v. Env't Tectonics Corp., Int'l*, 493 U.S. 400, 405 (1990). "Act of state issues only arise when a court *must decide*—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine." *Id.* at 406 (emphasis in original). Mrs. Khashoggi does not seek to bind a foreign sovereign to a judgment, force it to pay damages, or to take or refrain from any action. *See, e.g.*, *AES Corp.*, 466 F. Supp. 2d at 695. The fact that a judgment against NSO may reflect badly upon a sovereign's action is not grounds for applying the act of state doctrine to bar suit. *Kirkpatrick*, 493 U.S. at 409.

***Finally***, even if Mrs. Khashoggi's claims did require the Court to pass judgment on Saudi Arabia or the UAE's action (which they do not), the act of state doctrine still would not apply. As this Court and others have held, "an act that violates *jus cogens* norms cannot serve as a basis for the act of state doctrine." *Warfaa v. Ali*, 33 F. Supp. 3d 653, 662 (E.D. Va. 2014) (Brinkema, J.); *See also Yousuf IV*, 699 F.3d at 776; *Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 554 (N.D. Cal. 2021). "*[J]us cogens* norms of international law which are certain 'universally agreed-upon norms' 'accepted and recognized by the international community of States as a whole.'" *Warfaa*, 33 F. Supp. 3d at 661 (quoting *Yousuf IV*, 669 F.3d at 774). The conduct Mrs. Khashoggi alleges here—NSO's use of comprehensive foreign surveillance in service of

extrajudicial execution—most certainly violates *jus cogens* norms.[7] *Yousuf IV*, 699 F.3d at 775 ("Prohibitions against the acts involved in this case—torture, summary execution and prolonged arbitrary imprisonment—are among these universally agreed-upon norms."); *Warfaa*, 33 F. Supp. 3d at 662 ("Extrajudicial killing has long been condemned by international law."). The act of state doctrine therefore does not apply. For all of these reasons, NSO's arguments for dismissal based on the act of state doctrine have no merit and should be rejected.

## II.     The Complaint Should Not Be Dismissed on *Forum Non Conveniens* Grounds

Under the doctrine of *forum non conveniens* "a plaintiff's choice of forum should rarely be disturbed" as there is a "strong presumption in favor of plaintiff's choice of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241-55 (1981). Moreover, the presumption is "especially strong where . . . plaintiff is a U.S. resident . . . who has chosen [their] home forum for adjudication." *Carter v. Trafalgar Tours, Ltd.*, 704 F. Supp. 673, 678-79 (W.D. Va. 1989) (citations omitted). The strength of this presumption necessitates that dismissal for *forum non conveniens* should only be granted "reluctantly." *Id.* Dismissal for *forum non conveniens* is only appropriate where "trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience . . . ." *SAS Inst., Inc. v. World Programming Ltd.*, 468 Fed. Appx. 264, 265 (4th Cir. 2012) (citing *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (alterations in original).

---

[7] Even without the tragic outcome of a murder, NSO's conduct rises to the level of violating *jus cogens*. *See* Brief for David Kaye, Former Special Rapporteur to the United Nations on the Promotion and Protection of the Right to Freedom of Opinion and Expression as Amicus Curiae Supporting Respondents, at 3, *NSO Grp. v. WhatsApp, Inc.*, No. 20-16408 (9th Cir. Dec. 23, 2023) [hereinafter "David Kaye Amicus"] ("The use of Pegasus . . . constitutes a serious invasion of rights to privacy and free expression that are protected under international human rights law. . . . NSO's Pegasus tool . . . has repeatedly interfered with the human rights of activists, journalists, and others and has undermined democratic values globally.").

A district court reviewing a motion to dismiss on the basis of *forum non conveniens* must follow a three-prong analysis to "determine whether the alternative forum is: available; adequate; and more convenient in light of the public and private interests involved." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011).

### A. NSO Has Failed To Show that Israel Is an Available or Adequate Alternative Forum

NSO has failed to meet its burden of proving that Israel is an adequate alternative forum. A forum is adequate only if "(1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly. . . ." *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010).

*First*, Israel is not an available forum to Mrs. Khashoggi. Because she is seeking political asylum, she is not free to leave the territorial jurisdiction of the United States without risking her status as an asylum seeker.[8] Mrs. Khashoggi's inability to freely leave the United States prohibits her from meaningfully participating in, or even being present at, her own trial.

Moreover, Mrs. Khashoggi is in fear for her life. NSO's authoritarian clients have a well-reported history of extraordinary rendition of dissidents—including the brutal murder of Mrs. Khashoggi's own husband. Leaving the relative safety of the United States would cause her unnecessary emotional trauma. *See DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 805 (4th Cir. 2013) (holding "fear, emotional trauma, and [the] associated logistical complexity" are factors that

---

[8] *See, e.g.*, *Questions and Answers: Affirmative Asylum Eligibility and Applications*, United States Citizenship & Immigr. Servs. (Sept. 11, 2023), https://www.uscis.gov/humanitarian/refugees-and-asylum/asylum/affirmative-asylum-frequently-asked-questions/questions-and-answers-affirmative-asylum-eligibility-and-applications ("If you applied for asylum and have not yet received a decision, you should not leave the United States without first obtaining advance parole.").

cut against dismissing a case for *forum non conveniens*).

      **Second**, although NSO is subject to service of process in Israel, it has not agreed to accept subpoenas or to produce witnesses for depositions. This is significant considering ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Because NSO has not agreed to accept subpoenas or sit for depositions in Israel, the availability of Israel as a forum is limited. *Charles v. Sacoolas*, No. 1:20-cv-1052, 2021, U.S. Dist. LEXIS 214762, at *9 (E.D. Va. Feb. 16, 2021) (noting that United Kingdon is a limited forum where Defendants have not agreed to be subject to the service of subpoenas or the taking of depositions).

      **Third**, at least one court in Israel has prohibited other victims of NSO's unlawful conduct from obtaining any meaningful relief.[9]

### B. The Private Factors Do Not Favor Dismissal

      Even if Israel was an adequate alternative forum—and it is not—NSO has not carried its heavy burden of showing that the Eastern District of Virginia is oppressive or vexatious to it. *World Programming*, 468 Fed. Appx. at 265 (citing *Sinochem Int'l*, 549 U.S. at 429). Indeed, none of the private factors the Court must consider favor dismissal. These factors include:

> (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) possibility of view of premises, if view would be appropriate to the action; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

---

[9] Amnesty International brought suit in Israel seeking to have the ministry of defense revoke NSO's license because of abuses of Pegasus. At the start of the case, Amnesty International and 29 other petitioners were forced to leave the courtroom and a gag order was placed on the proceedings. *See* Patrick O'Neill, *Inside NSO, Israel's Billion-Dollar Spyware Giant*, MIT Tech. Rev. (Aug. 9, 2020), https://www.technologyreview.com/2020/08/19/1006458/nso-spyware-controversy-pegasus-human-rights/. A few months later, the Israeli court dismissed the case. *Id.*

*American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). NSO does not show that a single factor strongly favors litigating this case in an Israeli court instead.

　　*Access to physical evidence and other sources of proof.* Courts undoubtedly face some difficulty in securing evidence from abroad, but these complications do not necessarily justify dismissal. *See MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, No. 3:09-cv-00078, 2010 Dist. LEXIS 70191, at *15-25 (W.D. Va. July 13, 2010). NSO has not shown that the problems it predicts facing in Virginia will not also transpire in Israel.

　　*First*, the barriers purportedly imposed by the Defense Export Control Law ("DECL") ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ will remain even if this case is moved to Israel. The DECL prohibits any transfer "to a person who is neither an Israeli citizen or and Israeli resident, or to a foreign corporation," even if the transfer takes place in Israel.[10] Moreover, the Israeli government has granted a license to NSO in the past for NSO to market and sell its technology around the world, including in the United States. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮

　　*Second*, NSO's insistence that the DECL ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ requires this Court to dismiss this case is misplaced. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See Societe Internationale Pour*

---

[10]　*Defense Export Control Law*, Gov't of Israel Ministry of Def., https://exportctrl.mod.gov.il/English/Pages/Defense-Export-Control-Law-.aspx (last visited Oct. 12, 2023); ▮▮▮▮▮.

[11] Moreover, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Participations Industrielles et Commerciales, S. A.* v. *Rogers*, 357 U.S. 197, 204-206 (1958); *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 544 n.29 (1987); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1474-79 (9th Cir. 1992) (compelling discovery ▮▮▮▮▮▮▮▮▮▮▮▮

   ***Third***, NSO claims that its placement on the Entity List prohibits ***any U.S. individual or entity*** from exporting certain items to NSO, including software and technology, and there is no exception for technology created and owned by NSO itself. Mot. at 20. As a result, NSO's U.S. litigation counsel cannot communicate with NSO regarding its own technology. *Id.* at 20. If true—though Mrs. Khashoggi does not concede that NSO's interpretation of the law is correct—these very same restrictions would apply to the litigation in Israel, because ***Mrs. Khashoggi*** could not produce her evidence concerning NSO's technological exploits directly to NSO. The restrictions would be even less manageable and more burdensome in Israel. In the United States at least, Plaintiff could produce the documents to NSO's U.S. Counsel on an attorneys-eyes-only basis, and NSO could retain U.S. experts to review those materials as its proxy.[12]

   Finally, NSO was placed on the U.S. Entity List through its own misconduct. It would be unfair to permit NSO to use those self-imposed sanctions to force Mrs. Khashoggi into a forum where she will not only be prohibited from obtaining NSO's documents but would also not be able to use her own evidence to hold NSO to account for its unlawful conduct.

   ***Availability of compulsory process to obtain attendance of witnesses.*** NSO is wrong in its

---

[12] Contrary to NSO's assertions otherwise, Mot. at 18, Mrs. Khashoggi is open to and did discuss with NSO instituting a carefully tailored protective order at the appropriate stage of the litigation. She agreed to a limited protective order specific to this motion but has not suggested that a broader protective order was unreasonable or unnecessary at a later date.

assertion that "all of NSO's alleged conduct took place overseas [and that] the most significant documents and witnesses are in Israel and other foreign countries." Mot. at 17. While NSO's documents are important, and can and should be produced, Mrs. Khashoggi's documentation of NSO's unlawful conduct and her witnesses are also among the most significant in the case, and that evidence is primarily located in the United States.

In addition, although NSO claims that "many witnesses will not be available" to testify in the United States and are not subject to compulsory process, Mot. at 17-18, it has not satisfied its burden of showing that litigating in Israel will increase the willingness of any witness to testify. NSO must do more than simply point to categories of witnesses who are outside of the Court's control. *DiFederico*, 714 F.3d at 806. NSO does not explain who these witnesses are, where they are located, or why they are significant. It also provides no evidence that any of these witnesses would be unwilling to testify, nor does it explain why the substance of their testimony could not be covered by a Rule 30(b)(6) deposition if necessary. A general assertion that some foreign witnesses will not be available in Virginia, without more, is insufficient to tip the scales in its favor on this issue. *Id.* at 807.[13]

As for NSO's current employees, it is obligated to provide the testimony of its senior management or suffer sanctions. Fed. R. Civ. P. 37(d)(1)(A)(i). Some of that senior management is already present in the United States. Indeed, Omri Lavie, a co-founder and principal of NSO,

---

[13] NSO also overstates the difficulty of compelling testimony from Israeli witnesses. Israel is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, which allows U.S. Courts to obtain documents and testimony from Israeli witnesses. U.S. Courts have successfully employed these procedures to obtain testimony from Israeli witnesses. *See, e.g.*, *Est. of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 255-56 (D.D.C. 2011).

resides in New Jersey and is currently the sole shareholder of the company that owns NSO.[14] Mr. Lavie's company, and ultimately Mr. Lavie, has been involved in the day-to-day management of NSO since the takeover in early 2023. *See infra* note 14.

   ***Enforcement of judgment.*** The Court's judgment would be enforceable against assets and operations in Israel, contrary to NSO's assertion otherwise. U.S. Courts have recognized that Israeli law provides for the enforcement of U.S. judgments in Israeli Courts. *See, e.g.*, *Tahan v. Hodgson*, 662 F.2d 862, 868 (D.C. Cir. 1981). In addition, NSO has business interests around the world. The sole shareholder of its parent company is based in Luxembourg. Saeedy & Volz, *supra* note 14. As such, Mrs. Khashoggi could seek to enforce any judgment on assets located outside of Israel.

   ***All other practical problems that make trial of a case easy, expeditious and inexpensive.*** NSO's claim that the Court should dismiss this case because "many of NSO's internal documents are written in Hebrew and translating these materials into English for purposes of production and testimony would be burdensome" is specious. Mot. At 19. Documents would need to be translated from Hebrew even if the case was transferred to Israel because Mrs. Khashoggi and her expert witnesses do not read or speak Hebrew.

   NSO's claims about the burden of litigating in Virginia are unavailing. Given the parties' respective locations, the convenience of the parties is, at best, neutral and therefore points against

---

[14] Raphael Satter, *WhatsApp Takes Step Toward Winning Spyware Lawsuit After Israeli Company No-Show*, Reuters (Mar. 3, 2020, 7:43 PM), https://www.reuters.com/article/us-whatsapp-court/whatsapp-takes-step-toward-winning-spyware-lawsuit-after-israeli-company-no-show-idUSKBN20R02M; Alexander Saeedy & Dustin Volz, *Israeli Cyber Company NSO Group Has New Ownership After U.S. Blacklist*, Wall St. J. (May 26, 2023) https://www.wsj.com/articles/israeli-cyber-company-nso-group-has-new-ownership-after-u-s-blacklist-a2cda00a.

dismissal. Additionally, in this instance, because NSO is already litigating several cases in the United States (one of which has already been set for trial), the convenience factors favor keeping the case in Virginia. *See WhatsApp*, 17 F.4th 930, *cert. denied*, 143 S. Ct. 562 (2023); *Apple Inc., v. NSO Grp. Techs. Ltd.*, No. 3:21-cv-09078-JD (N.D. Cal. Nov. 23, 2021); *Corallo v. NSO Grp. Techs. Ltd.*, No. 3:22-cv-5229 (N.D. Cal. Sep. 13, 2022); *Dada v. NSO Grp. Techs.*, No. 3:22-cv-07513-WHA (N.D. Cal. Dec. 16, 2022).

### C.      The Public Factors Counsel Against Dismissal

The public factors do not warrant dismissal either. These include: (1) the local interest in the lawsuit, (2) the court's familiarity with the governing law, (3) the burden on local courts and juries, (4) congestion in the court, and (5) the costs of resolving a dispute unrelated to a particular forum. *Piper Aircraft Co.*, 454 U.S. at 241 n.6; 243.

*Local Interest of the lawsuit.* NSO's suggestion that Israel has a greater interest in this lawsuit because it involves the unlawful conduct of Israeli companies is misplaced. Mot. At 21. Mrs. Khashoggi is a resident of Virginia and was married to Jamal Khashoggi in Virginia where they lived together during the time that her devices were targeted by NSO. Compl. ¶¶ 4, 9, 15, 34, 110, 123. Virginia enacted the Virginia Computer Crimes and Abuse Act ("VCCA") (even before the CFAA) because it has a deep-rooted interest in protecting its residents against the very conduct that is the core of this lawsuit. Va. Code Ann. § 18.2-152.1 *et seq.* In addition, the United States has a strong interest in the issues presented here, as President Biden made plain in a recent executive order. Exec. Order. No. 14,093, 88 Fed. Reg. 18,957 (Mar. 27, 2023).

*The Court's familiarity with governing law.* Mrs. Khashoggi's claims are governed exclusively by U.S. and Virginia law. It is indisputable that this Court has greater familiarity with those laws. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[B]ecause torts involve

wrongful conduct which a state seeks to deter, and against which it attempts to afford protection," a "state has an especial interest in exercising judicial jurisdiction over those who commit torts within its territory."). Thus, this factor weighs heavily against dismissal.

**Burden on local courts and juries.** This Court is well-equipped to handle this trial and has a robust history of handling long, complicated trials involving sensitive evidence. *See, e.g.*, *U.S. v. Moussaoui*, No. 01-455-A, 2002 U.S. Dist. Lexis 29077 (E.D. Va. Sept. 26, 2002) (Brinkema, J.). Moreover, "because this forum has an interest in the case, it is not unfair to burden a jury in the Eastern District of Virginia with deciding this controversy." *Sacoolas*, 2021 U.S. Dist. LEXIS 214762, at *17.

**Congestion in the Court.** NSO has failed to address this factor at all. "To the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009) (citing *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether [transfer] will reduce a court's congestion but whether a trial may be speedier in another court because of a less crowded docket.")). Regardless of any hypothetical congestion in this Court, NSO has failed to show that this case will reach trial any sooner in Israel. In fact, ███████████████████████ ███████████████████████

**Costs of resolving a dispute unrelated to a particular forum.** Although NSO claims this lawsuit will be costly, it does nothing to articulate what it anticipates those costs will be or how moving the trial to Israel would impact those costs. As such, this factor does not favor dismissal.

### III.  The Complaint Has Adequately Stated Claims Against NSO

### A. Mrs. Khashoggi Has Stated a CFAA Claim.

NSO's use of Pegasus against innocent victims "is precisely the type of activity that the

CFAA is designed to prevent." *Microsoft Corp. v. Doe*, No. 1:17-cv-01224-TSE-MSN, 2018 U.S. Dist. LEXIS 202016, at *21-22 (E.D. Va. Oct. 31, 2018) (citing *State Analysis Inc. v. Am. Fin. Services Assoc.*, 621 F. Supp. 2d 309, 315 (E.D. Va. 2009) (Brinkema, J.)); *see also Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 932 (E.D. Va. 2010) (Brinkema, J.). "When considering a motion to dismiss, the Court must accept all the complainant's factual allegations as true and resolve factual differences in that party's favor." *See Boyd v. CEVA Freight*, No. 3:13-cv-00150-JAG, 2013 U.S. Dist. LEXIS 169514, at *5 (E.D. Va. Nov. 26, 2013) (citing *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir.1991)). Contrary to NSO's assertions, Mrs. Khashoggi has adequately alleged several violations of the CFAA, has demonstrated the applicable damage and loss requirements, and has brought this action within the enumerated statute of limitations as prescribed in the CFAA.

The CFAA is primarily a criminal statute, but it specifically enumerates civil causes of action.

> Civil liability under the Computer Fraud and Abuse Act ("CFAA") exists when a Defendant [1] intentionally accesses a protected computer without authorization and, as a result of such conduct, causes damage and loss; [2] intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer; or [3] knowingly causes the transmission of a program, information, code, or command and, as a result of such conduct, intentionally causes damage without authorization to a protected computer.

*Anderson v. Fluor Intercontinental, Inc.*, No. 1:19-cv-0289, 2021 U.S. Dist. LEXIS 45526, at *66-67 (E.D. Va. Jan. 4, 2021).

The Complaint adequately alleges that NSO itself engaged in conduct that is squarely prohibited by the statute. Compl. ¶¶ 42, 46-48, 66-71, 77; Compl. Ex. 1, at 21, 38, 41. NSO attempts to have it both ways—it simultaneously contends that it thoroughly vets all clients for human rights abuses and monitors and immediately shuts down clients that "misuse" the spyware,

while also claiming it has no insight into its clients' activity and can see nothing of the data it collects.[15]

**_Primary Liability._** NSO claims that Mrs. Khashoggi did not allege any instances of a CFAA violation wherein NSO directly accessed her devices. Mot. 24-25. That is simply not true. At the motion to dismiss stage of litigation, Plaintiff's claims are subject to a "plausibility" standard. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009); _see also Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007). At this phase, "[t]he court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they 'plausibly give rise to an entitlement to relief.'" _Good 'Nuff Garage, LLC v. McCulley_, No. 3:21-cv-571, 2022 U.S. Dist. LEXIS 174474, at *12-13 (E.D. Va. Sep. 26, 2022) (citations omitted). In this context, where the "evidence related to the computer crimes claims '[is] peculiarly within the possession and control of the defendant[s]'" Plaintiff need only "'make[] the inference of culpability plausible . . . .'" _Marsh v. Curran_, 362 F. Supp. 3d 320, 330 (E.D. Va. 2019).

Mrs. Khashoggi has met her pleading burden. The Complaint alleges multiple instances of attempts and likely confirmed infiltrations of Pegasus on Mrs. Khashoggi's devices, resulting in sustained and continual monitoring of all information on her device, and her movements and conversations, including those with her husband. _See, e.g._, Compl. ¶¶ 42, 58, 65, 101, 102, 103, 105, 108, 123, 129, 135, 140, 141; Marczak Decl. ¶¶ 9-12. Importantly, in the similar _WhatsApp_

---

[15] Mot. at 2 ("NSO contractually can suspend and/or terminate service to customers engaged in any improper use of NSO's Pegasus technology—and has done so" and "NSO has no knowledge of who any customer monitors using NSO's technology and does not have access to any information gathered by its customers.").

case against NSO, the District Court for the Northern District of California rejected the very same CFAA argument NSO makes here. *WhatsApp*, 472 F. Supp. 3d at 680-683. Through its "WhatsApp Exploit" at the center of the *WhatsApp* case, NSO allegedly sent malicious code to the devices of at least 1,400 WhatsApp users. In that case, NSO challenged WhatsApp's ability to assert a cause of action under the CFAA because the ultimate victims were the users whose phones were affected, and not WhatsApp itself. *Id.* The Court held both that WhatsApp could bring a claim under the CFAA even though it was its customers that were targeted and that the allegations were sufficiently pleaded. *Id.* Forensic analysis shows that Mrs. Khashoggi's devices were likely targeted through a WhatsApp breach. The timing and technological markers show crashes that were segmentation faults (also known as a "segfaults" or access violation faults) that show the same pattern of events present in NSO's WhatsApp exploit. Marczak Decl. ¶13. By NSO's own reasoning, Mrs. Khashoggi alleges a violation of the CFAA against NSO as a victim of its WhatsApp exploit. *See WhatsApp*, at 682.

Additionally, the CFAA contemplates civil liability for anyone that "knowingly ***causes*** the transmission of a program, information, code, or command and, as a result of such conduct, intentionally causes damage without authorization to a protected computer." 18 U.S.C. §1030(a)(5)(A) (emphasis added). Under the plain language of the statute, the term "causes" creates liability for anyone that is instrumental in the process of causing damage to a protected computer without authorization. *See, e.g.*, *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 926, 935-36 (E.D. Tex. 1999) ("18 U.S.C. § 1030's 'transmission' includes [] design, manufacture, creation, distribution, sale, transmission, and marketing . . . "); *see also Attkisson v. Holder*, No. 1:17-cv-364, 2017 U.S. Dist. LEXIS 181815, at *29 (E.D. Va. Nov. 1, 2017) (Brinkema, J.) (contemplating the argument not made by the plaintiffs in that case that "§ 1030(a)(5)(A), which

reaches any person who 'causes' the transmission of programs or code that harms a protected device, should be interpreted to reach individuals who allow or direct . . . electronic intrusions without themselves personally accessing the protected device."). Here, NSO's misconduct subjects it to primary liability under the CFAA. Compl. ¶¶ 46, 47, 66-71; *see also infra passim.*

***Secondary Liability***. Mrs. Khashoggi's claims also survive under a theory of secondary liability. NSO cannot hide behind its clients when it configures and maintains the infrastructure that supports the operation of Pegasus, trains its clients in its use, and assists those clients throughout every stage of the deployment and operation of the spyware. Compl. ¶¶ 46-48, 66-71, 77. NSO's role is both integral to and inextricably intertwined with deploying Pegasus to infiltrate target devices.

NSO's claim that "the CFAA does not authorize aiding and abetting liability in civil actions" is erroneous. Mot. at 25. Courts across the country have concluded that the CFAA contemplates secondary liability. *See* 18 U.S.C. § 1030(b); *see also, e.g.*, *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1296 (S.D. Fla. 2016) (holding "direct access to a computer is not required and a defendant can be held liable under the CFAA under an aiding and abetting theory of liability" where third parties "would not have been able to access the plaintiff's computers without [Defendants'] act[s]."); *Joe N. Pratt Ins. v. Doane*, No. V-07-07, 2008 U.S. Dist. LEXIS 22448, at *29 (S.D. Tex. Mar. 20, 2008) (denying motion to dismiss where Plaintiff "has set forth facts sufficient to support its theories . . . [that] Defendants aided and abetted and/or conspired . . . to violate the CFAA."); *Cor Sec. Holdings v. Bank of Cal.*, No. CV-17-1403-DOC, 2018 U.S. Dist. LEXIS 237262, at *22 (C.D. Cal. Feb. 12, 2018) ("Defendants have not persuaded the Court that legal precedent forecloses a civil aiding and abetting claim under CFAA."); *Synthes, Inc. v. Emerge Med., Inc.*, No. 11-1566, 2012 U.S. Dist. LEXIS 134886, at *58 (E.D. Pa. Sep. 19,

2012) ("Primarily, the plain language of the statute requires only 'access'—no modifying term suggesting the need for 'personal access' is included."); *see also WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 204 (4th Cir. 2012) (interpreting "access" using the common meaning of the word); *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("[T]echnological gamesmanship or the enlisting of a third party to aid in access will not excuse liability.").

The CFAA specifically recognizes conspiracy claims. 18 U.S.C. § 1030(b). NSO cannot escape that its overt acts rise to the level of conspiracy to violate the CFAA when it has contracted with its clients and provided essential infrastructure, training, and assistance in every stage of deployment of Pegasus. *C.f.*, *Al Shimari v. CACI Premier Tech., Inc.*, 324 F. Supp. 3d 668, 697 (E.D. Va. 2018) (Brinkema, J.) ("Plaintiffs have appropriately alleged . . . that CACI personnel substantially aided the military personnel responsible for directly carrying out the abuses, ***including directing them on how to set the conditions of confinement, ordering them to employ various abusive tactics, and helping them conceal the abuses***.") (emphasis added); *Phreesia, Inc. v. Certify Glob., Inc.*, No. DLB-21-678, 2022 U.S. Dist. LEXIS 56856, at *30 (D. Md. Mar. 29, 2022) (citations omitted) ("The Court's rulings on the CFAA claim apply to the related conspiracy claim. Civil conspiracy is 'the "combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."'"). As one example, Mrs. Khashoggi received Enhanced Social Engineering Messages ("ESEM") which are specially crafted messages intended to lure the target to open it that NSO advertises it will create for its clients. Compl. ¶¶ 101-102; *see also* David Kaye Amicus, *supra* note 7, at 9 ("Not only does the company help set up Pegasus for a customer and

24

troubleshoot it, but 'NSO also helps some customers craft phishing messages that the target is more likely to click.'").

***Plaintiff Has Pleaded both Damage and Loss Sufficient To Bring a CFAA Claim.*** Mrs. Khashoggi has sufficiently pleaded loss and damage under 18 U.S.C. § 1030(c)(4)(A)(i)(I, III-IV). NSO dedicates the majority of its argument that the Complaint does not sufficiently plead "damage" because it does not allege ***physical*** damage to the actual technological component of her device. NSO's argument misses the mark. The statute specifically defines damage as "any impairment to the ***integrity*** or availability of data, ***a program, system, or information***. 18 U.S.C. § 1030(e)(8) (emphasis added); *see also United States v. Yücel*, 97 F. Supp. 3d 413, 420 (S.D.N.Y. 2015) ("'Integrity,' as relevant here, means '[t]he condition of not being marred or violated; unimpaired or uncorrupted condition; original perfect state; soundness.'"); *see also Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 2d 1121, 1127 (W.D. Wash. 2000). The installation of Pegasus on a device inherently damages its integrity.

Mrs. Khashoggi has also adequately pleaded "loss" under the CFAA. ***First***, only 18 U.S.C. § 1030(c)(4)(A)(i)(I) requires a showing of economic damages totaling at least $5,000 in a one-year period. The Pegasus attacks diminished the value of Mrs. Khashoggi's device completely, rendering the device useless since a personal device transformed into a highly sophisticated surveillance tool cannot be used for any type of personal or private communication.

***Second***, the CFAA includes the cost of investigating and responding to an offense as loss. 18 U.S.C. 1030(e)(11); *A.V. v. iParadigms, LLC*, 562 F.3d 630, 646 (4th Cir. 2009) ("This broadly worded provision plainly contemplates consequential damages . . . [i.e.,] costs incurred as part of the response to a CFAA violation, including the investigation of an offense."). Mrs. Khashoggi and the experts she enlisted to examine her devices employed significant resources investigating

and remediating the attack. Compl. ¶¶ 42, 44, 65, 102, 106, 125, 141; Marczak Decl. ¶ 7; *see also Animators at L., Inc. v. Capital Legal Sols., LLC*, 786 F. Supp. 2d 1114, 1122 (E.D. Va. 2011) ("[T]he CFAA does not require losses to be paid for in cash. Indeed, a holding that CFAA losses must be reduced to a cash exchange would conflict with the principle that a CFAA plaintiff may recover damages for its own employees' time spent responding to CFAA violations.").

NSO does not address any of the losses Mrs. Khashoggi sustained under 18 U.S.C. § 1030(c)(4)(A)(i)(IV) at all. Because there is no economic damages requirement under 18 U.S.C. § 1030(c)(4)(A)(i)(III-IV), which deal with physical injury to *any* person and posing a threat to public health or safety, NSO instead claims that the physical harm, and threat to public safety were not caused by any of its actions. However, the Complaint is replete with allegations, which must be accepted as true, that NSO's actions caused harm here. Compl. ¶¶ 17, 29, 106-107, 124, 128-130, 146-149; *see Hains v. Adams*, No. 3:19-cv-504, 2019 U.S. Dist. LEXIS 196113, at *24 (E.D. Va. Nov. 12, 2019) ("Subclause (III) allows for recovery for a violation that results in a physical injury."); *Wofse v. Horn*, 523 F. Supp. 3d 122, 139-140 (D. Mass. 2021).

***Plaintiff's Claims are Not Time-Barred.*** The CFAA claims are not time-barred. The two-year statute of limitations begins to run on "the date of the act complained of or the date of ***discovery of the damage***." 18 U.S.C. § 1030(g) (emphasis added). NSO's argument hinges entirely on the assertion that Mrs. Khashoggi does not allege "damage" under the statute. For the reasons stated above, the Complaint adequately alleges both loss and damage. Moreover, the allegations of the Complaint make clear that Mrs. Khashoggi could not have possibly known about damage to her device before Citizen Lab confirmed Pegasus's presence on her device in December of 2021.

**B. Mrs. Khashoggi Has Stated a VCCA Claim**

NSO's arguments claiming Mrs. Khashoggi failed to allege a claim under the VCCA mirror its CFAA arguments that " . . . NSO did [not do] anything that violates the VCCA," placing any blame on its clients and summarily claiming that the VCCA contains no provision authorizing secondary liability. Mot. At 27.

NSO's bare reasoning is unsupported by caselaw because it cannot be. "To show a violation of the VCCA, 'a plaintiff must demonstrate that the defendant (1) used a computer or computer network without authority (2) with the intent to obtain property or services by false pretenses, embezzle or commit larceny, or convert the property of another.'" *Federated It v. Anthony*, Civil Action No. 1:18-cv-1484, 2020 U.S. Dist. LEXIS 150555, at *20 (E.D. Va. May 12, 2020) (citations omitted). "The Fourth Circuit has made clear that consequential damages, such as expenses incurred for the investigation and prevention of VCCA violations, are actionable under the statute." *Ctr. L. & Consulting, LLC v. Axiom Res. Mgmt.*, 456 F. Supp. 3d 765, 772 (E.D. Va. 2020); s*ee also Hately v. Watts*, 917 F.3d 770, 781-82 (4th Cir. 2019). Damages are not limited under the plain language of the VCCA, nor is the Act limited to injuries sustained only by Plaintiff. Va. Code Ann. § 18.2-152.12(A).

Virginia further recognizes aiding and abetting liability, though not as a "separate tort," which Plaintiff did not plead. *All. Tech. Grp., LLC v. Achieve 1, LLC*, No. 3:12-cv-701-HEH, 2013 U.S. Dist. LEXIS 4708, at *16 (E.D. Va. Jan. 11, 2013); *Studco Bldg. Sys. United States, LLC v. 1st Advantage Fed. Credit Union*, 509 F. Supp. 3d 560, 571 (E.D. Va. 2020). Critically, the language of the statute itself uses terms showing "direct" infiltration is not necessary. *See, e.g.*, Va. Code Ann. § 18.2-152.4(2)(6) (2023) (using "cause" and "cause to be" language.).

**C. Plaintiff Has Stated a Claim for Intentional Infliction of Emotional Distress**

To state a claim for Intentional Infliction of Emotional Distress ("IIED"), Mrs. Khashoggi must show: (1) NSO's conduct was intentional or reckless; (2) NSO's conduct was outrageous or intolerable; (3) there was a causal connection between NSO's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. *See Williams v. Agency, Inc.*, 997 F. Supp. 2d 409, 413-14 (E.D. Va. 2014). "[S]ubstantive claims for intentional infliction of emotional distress under Virginia law need not be pled in federal court with the degree of specificity required by Virginia courts." *Williams v. AM Lapomarda*, No. 3:19-cv-631, 2020 U.S. Dist. LEXIS 118502, at *41 (E.D. Va. July 6, 2020) (citations omitted). Therefore, "plaintiffs in federal court need only allege sufficient facts to 'allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* NSO only challenges the first, second, and fourth prongs of this test.

***First***, "[a]n individual may…inflict emotional distress recklessly if he takes an action without regard to the risk of causing emotional distress to a victim when he knew or could have been expected to know of the risk." *Agency*, 997 F. Supp. 2d at 414 (citations omitted). Here, NSO knew or should have known that selling its spyware to known human rights abusers would cause emotional distress to innocents targeted by that spyware. Compl. ¶¶ 72-85.

***Second***, NSO's "outrageous or intolerable" conduct that led to Mrs. Khashoggi's harm is detailed throughout the Complaint. Compl. ¶¶ 5, 42, 54-64, 72-85, 96-108. In short, enabling ***well-known*** human rights abusers to turn the phones of private citizens into 24/7 spy machines to gather information to plot a murder goes beyond all possible bounds of decency. Even where reasonable minds may differ as to whether this conduct is "outrageous or intolerable," "it is for the jury . . . to determine whether . . . the conduct has been sufficiently extreme and outrageous to result in

28

liability." *Plantan v. Smith*, No. 3:22-cv-407, 2023 U.S. Dist. LEXIS 82457, at *22 (E.D. Va. May 10, 2023) (quoting *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974)).

*Third*, Mrs. Khashoggi has not merely suffered "fear, anxiety, and extreme stress" as NSO suggests. Mot. at 28. She was forced from her job of over 20 years due to harassment, intimidation, and risks to her safety. Compl. ¶ 130. Her family's safety abroad has been jeopardized. Compl. ¶ 131. She has had to seek political asylum in the United States. Compl. ¶¶ 6, 18, 133. The Fourth Circuit has found that harms of the type suffered by Mrs. Khashoggi meet the standard for "severe" under common law IIED. *See, e.g.*, *Holley v. CVS Caremark Corp.*, No. 4:16-cv-00017, 2015 U.S. Dist. LEXIS 101522, at *6-10 (W.D. Va. Aug. 3, 2016); *Faulkner v. Dillon*, 92 F. Supp. 3d 493, 502 (W.D. Va. 2015*); Hatfill v. New York Times Co.*, 416 F.3d 320 (4th Cir. 2005); *AM Lapomarda*, 2020 U.S. Dist. LEXIS 118502, at *41 (Plaintiff alleged that she suffered from extreme emotional distress, shame, humiliation, agoraphobia, and a mental breakdown).

### D. Mrs. Khashoggi Has Sufficiently Alleged Negligence-Based Claims

Regarding NSO's assertion that it did not have a duty to Mrs. Khashoggi, in a negligence action, "[s]pecial relationships create a responsibility to take affirmative action for the aid or protection of another, and they arise only in narrow circumstances." *Durden v. United States*, 736 F.3d 296, 304 (4th Cir. 2013) (citation omitted). A "special relationship" can arise between the defendant and the plaintiff, or between the defendant and a "third-party tortfeasor" and "[w]hen the latter type of special relationship exists, there is a duty upon the actor to control the [tortfeasor's] conduct and to guard other persons against his dangerous propensities." *Id.* at 305 (citations omitted). Limited situations where a special relationship exists include "ones where an individual has assumed the obligation to take charge over, and control the behavior of, the third party." *Satterfield v. Wells Fargo Bank*, No. 1:23-cv-00009, 2023 U.S. Dist. LEXIS 85081, at *7

(E.D. Va. May 15, 2023) (finding that contractual language between a defendant and a third-party tortfeasor may evidence a special relationship) (citation omitted)).

NSO's own public statements evidence its assumption of the obligation to prevent harm to Mrs. Khashoggi. NSO's public statements show that it gets an immediate report when a phone is hacked and that it has the ability to shut its spyware down if it is being misused. Compl. ¶¶ 60 n.24, 46. Therefore, NSO had a duty to stop foreseeable misuse of its extraordinary technology, and it failed to do so for Mrs. Khashoggi. *See Satterfield*, 2023 U.S. Dist. LEXIS 85081, at *6-7.

**E. Plaintiff Has Adequately Alleged Trespass to Chattels**

NSO is wrong on the law and the facts regarding trespass to chattels. ***First,*** the Eastern District of Virginia has held that "intrusion into an individual's computer system through hacking [and] malware, may form the basis for claims of trespass to chattels and conversion." *Microsoft Corp. v. John Does 1-8*, No. 1:14-cv-00811, 2015 U.S. Dist. LEXIS 110145, at *26 (E.D. Va. July 20, 2015) (citing *Am. Online, Inc. v. IMS*, 24 F. Supp. 2d 548, 550 (E.D. Va. 1998) (Brinkema, J.)). The intrusion upon Mrs. Khashoggi's phone, through spyware tracking her every movement, and listening to every word, is sufficient to support a claim for trespass to chattels.

***Second***, NSO's claim that once it sells its software suite to a customer, it is completely hands-off, is not supported by its own marketing materials which boast its ability to "fairly easily extract the important data from virtually any application upon customer demand . . . ." Compl. Ex. 1, at 21. NSO cannot tell its customers in the real world that it can "hear . . . every phone call that is being hacked over the globe," Compl. ¶ 46, and then claim here that it is not the trespasser.

## <u>CONCLUSION</u>

For the reasons articulated herein and in the pursuit of fundamental fairness and justice, NSO's motion to dismiss should be denied in full.

DATED: October 13, 2023

By:   /s/ Annie E. Kouba
Annie Elizabeth Kouba (*pro hac vice*)
C. Ross Heyl (*pro hac vice*)
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
Email: akouba@motleyrice.com
        rheyl@motleyrice.com

*Michael J. Pendell* (*pro hac vice*)
MOTLEY RICE LLC
One Corporate Center
20 Church S., 17th Floor
Hartford, CT 06103
Telephone: (860) 882-1681
Email: mpendell@motleyrice.com

*Michael Quirk (pro hac vice)*
MOTLEY RICE LLC
40 W. Evergreen Ave., Ste. 104
Philadelphia, PA 19118
Telephone: (610) 579-9932

By:   /s/ Steven T. Webster
Steven T. Webster (VSB No. 31975)
WEBSTER BOOK LLP
300 N. Washington St., Suite 404
Alexandria, Virginia 22314
Telephone and Fax: (888) 987-9991
Email: swebster@websterbook.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

I certify that on October 13, 2023, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF system, which will notify all counsel of record.

/s/ Steven T. Webster
Steven T. Webster (VSB No. 31975)
Webster Book LLP