**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| HANAN ELATR KHASHOGGI, | Case No. 1:23-cv-779-LMB-LRV |
| Plaintiff, | |
| v. | **FILED UNDER SEAL** |
| NSO GROUP TECHNOLOGIES LTD. and Q CYBER TECHNOLOGIES LTD., | **HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY** |
| Defendants. | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................1

    I.    Plaintiff Identifies No Basis for Personal Jurisdiction. ...................................1

        A.   NSO is not subject to specific jurisdiction. .............................................1

        B.   NSO is not subject to jurisdiction under Rule 4(k)(2). .........................3

        C.   The exercise of jurisdiction would not be reasonable. .........................4

    II.   NSO Is Immune From Suit. ...............................................................................5

    III.  The Act of State Doctrine Bars Plaintiff's Claims. ..........................................6

    IV.  *Forum Non Conveniens* Requires Dismissal. .................................................8

    V.   The Complaint Fails to State a Claim................................................................13

        A.   Plaintiff does not state a CFAA claim. ..................................................13

        B.   Plaintiff cannot apply Virginia law extraterritorially............................17

        C.   Plaintiff does not state a VCCA claim. ..................................................18

        D.   Plaintiff does not state an IIED claim. ...................................................18

        E.   Plaintiff does not state any negligence-based claim................................19

        F.   Plaintiff does not state a claim for trespass to chattels...........................20

CONCLUSION......................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdvanFort Co. v. Cartner*,
　2015 WL 12516240 (E.D. Va. Oct. 30, 2015) ......................................................................7

*Adventure Communications, Inc. v. Kentucky Registry of Election Finance*,
　191 F.3d 429 (4th Cir. 1999) .............................................................................................18

*Al Shimari v. CACI Premier Tech., Inc.*,
　324 F. Supp. 3d 668 (E.D. Va. Feb. 21, 2018) (Brinkema, J.) .............................................17

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)................................................................................................2, 14, 15

*Attkisson v. Holder*,
　2017 WL 5013230 (E.D. Va. Nov. 1, 2017) (Brinkema, J.)...................................................16

*Ball v. Joy Techs., Inc.*,
　958 F.2d 36 (4th Cir. 1991) ................................................................................................14

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"*
　283 F.3d 208 (4th Cir. 2002) ................................................................................................3

*Blades of Green, Inc. v. Go Green Lawn & Pest, LLC*,
　2023 WL 5278654 (D. Md. Aug. 16, 2023) .........................................................................16

*Broidy Cap. Mgmt. LLC v. Muzin*,
　12 F.4th 789 (D.C. Cir. 2021)...............................................................................................5

*Broidy Cap. Mgmt., LLC v. Qatar*,
　982 F.3d 582 (9th Cir. 2020) ........................................................................................6, 7, 8

*Burns v. Gagnon*,
　283 Va. 657 (2012) ............................................................................................................19

*Butters v. Vance Int'l, Inc.*,
　225 F.3d 462 (4th Cir. 2000) ............................................................................................5, 6

*Cengiz v. Salman*,
　2022 WL 17475400 (D.D.C. Dec. 6, 2022)............................................................................8

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
　511 U.S. 164 (1994). (Mot. 25-26.) ....................................................................................16

ii

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) ............................................................................12

*Cockrum v. Donald J. Trump for President, Inc.*,
  365 F. Supp. 3d 652 (E.D. Va. 2019) ................................................................18

*COR Sec. Holdings Inc. v. Banc of Cal.*,
  2018 WL 4860032 (C.D. Cal. Feb. 12, 2018).....................................................16

*Corbitt v. Baltimore City Police Dep't*,
  2023 WL 3793997 (D. Md. June 2, 2023).............................................................4

*DiFederico v. Marriott Int'l, Inc.*,
  714 F.3d 796 (4th Cir. 2013) ................................................................................9

*Du v. Cisco Sys.*,
  2 F. Supp. 3d 717 (D. Md. 2014)..................................................................6, 7, 8

*Duha v. Agrium, Inc.*,
  448 F.3d 867 (6th Cir. 2006) ..............................................................................11

*Durden v. United States*,
  736 F.3d 296 (4th Cir. 2013) ..............................................................................20

*Eckert Int'l, Inc. v. Fiji*,
  834 F. Supp. 167 (E.D. Va. 1993) ........................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
  844 F.3d 1058 (9th Cir. 2016) ............................................................................17

*Fed. Ins. Co. v. Lake Shore Inc.*,
  886 F.2d 654 (4th Cir. 1989) ................................................................................4

*Fidrych v. Marriott Int'l, Inc.*,
  952 F.3d 124 (4th Cir. 2020) ................................................................................1

*Fields v. Wise Media, LLC*,
  2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) ...................................................20

*Goodman v. Goodman*,
  2022 WL 17826390 (S.D.N.Y. Dec. 21, 2022) ..................................................13

*Hains v. Adams*,
  2019 WL 5929259 (E.D. Va. Nov. 12, 2019).....................................................14

*Hatfill v. New York Times Co.*,
  416 F.3d 320 (4th Cir. 2005) ..............................................................................19

*Herbage v. Meese*,
    747 F. Supp. 60 (D.D.C. 1990) .................................................................5

*IAM v. OPEC*,
    649 F.2d 1354 (9th Cir. 1981) ............................................................7, 8

*Interface Partners Int'l Ltd. v. Hananel*,
    575 F.3d 97 (1st Cir. 2009) ................................................................11

*Iqbal. Fuller v. Aliff*,
    990 F. Supp. 2d 567 (E.D. Va. 2013) ..................................................19

*Jiali Tang v. Synutra Int'l, Inc.*,
    656 F.3d 242 (4th Cir. 2011) ................................................................9

*Joe N. Pratt Ins. v. Doane*,
    2008 WL 819011 (S.D. Tex. Mar. 20, 2008) ......................................16

*Kisano Trade & Inv. Ltd. v. Lemster*,
    737 F.3d 869 (3d Cir. 2013) ..............................................................12

*Estate of Klieman v. Palestinian Auth.*,
    272 F.R.D. 253 (D.D.C. 2011) ...........................................................11

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*,
    2015 WL 1289984 (N.D. Cal. Mar. 20, 2015) ...................................16

*Lockman Found. v. Evangelical All. Mission*,
    930 F.2d 764 (9th Cir. 1991) ................................................................9

*Microsoft Corp. v. John Does 1-8*,
    2015 U.S. Dist. LEXIS 110145 (E.D. Va. July 20, 2015) ...................20

*Moriah v. Bank of China Ltd.*,
    107 F. Supp. 3d 272 (S.D.N.Y. 2015) ..................................................6

*Ning Xianhua v. Oath Holdings, Inc.*,
    536 F. Supp. 3d 535 (N.D. Cal. 2021) .................................................8

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) ...............................................14

*NSO Grp. v. WhatsApp, Inc.*,
    No. 20-16408 (9th Cir. Dec. 23, 2023) .................................................8

*Pelletier v. Elam*,
    2021 WL 2545462 (E.D. Va. June 17, 2021) .....................................15

*Phreesia, Inc. v. Certify Global, Inc.*,
  2022 WL 911207 (D. Md. Mar. 29, 2022)........................................................................13, 17

*Piper Aircraft Co. v. Reyno*,
  454 U.S. 235 (1981)........................................................................................................11

*Potomac Cap. Inv. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V.*,
  1998 WL 92416 (S.D.N.Y. Mar. 4, 1998) ..........................................................................9

*Rishikof v. Mortada*,
  70 F. Supp. 3d 8 (D.D.C. 2014)........................................................................................5

*Samantar v. Yousuf*,
  560 U.S. 305 (2010)..........................................................................................................5

*Satterfield v. Wells Fargo Bank*,
  2023 U.S. Dist. LEXIS 85081 (E.D. Va. May 15, 2023) ..............................................19, 20

*Satz v. McDonnell Douglas Corp.*,
  244 F.3d 1279 (11th Cir. 2001) ........................................................................................9

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993)..........................................................................................................6

*Saudi v. Northrop Grumman Corp.*,
  427 F.3d 271 (4th Cir. 2005) ............................................................................................4

*Shaw v. Toshiba Am. Info. Sys.*,
  91 F. Supp. 2d 926 (E.D. Tex. 1999)................................................................................16

*Sherley v. Lotz*,
  200 Va. 173 (1958) ..........................................................................................................17

*Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc.*,
  119 F. Supp. 3d 1121 (W.D. Wash. 2000)........................................................................13

*Smith v. Sam Carbis Sols. Grp.*,
  2017 WL 874983 (D.S.C. Mar. 6, 2017) ..........................................................................19

*Sussman v. Bank of Israel*,
  801 F. Supp. 1068 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993) ................................10

*Synthes, Inc. v. Emerge Med., Inc.*,
  2012 WL 4205476 (E.D. Pa. Sep. 19, 2012) ....................................................................17

*UMG Recordings, Inc. v. Kurbanov*,
  963 F.3d 344 (4th Cir. 2020) ............................................................................................1

*United States v. Yücel*,
    97 F. Supp. 3d 413 (S.D.N.Y. 2015)........................................................................13

*Verizon Online Servs. v. Ralsky*,
    203 F. Supp. 2d 601 (E.D. Va. 2002) .......................................................................2

*W. Union Telegraph Co. v. Davis*,
    114 Va. 154 (1912) ...................................................................................................17

*W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp.*,
    493 U.S. 400 (1990) ...................................................................................................8

*Walden v. Fiore*,
    571 U.S. 277 (2014)...........................................................................................1, 3, 4

*Walsh v. Microsoft Corp.*,
    63 F. Supp. 3d 1312 (W.D. Wash. 2014)................................................................14

*Warfaa v. Ali*,
    33 F. Supp. 3d 653 (E.D. Va. 2014) .........................................................................8

*WEC Carolina Energy Sols. LLC v. Miller*,
    687 F.3d 199 (4th Cir. 2012) ...................................................................................16

*Wesch v. Yodlee, Inc.*,
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........................................................14

*Westwind Acquisition Co. v. Universal Weather & Aviation, Inc.*,
    668 F. Supp. 2d 749 (E.D. Va. 2009) .....................................................................17

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    17 F.4th 930 (9th Cir. 2021) .....................................................................................5

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    472 F. Supp. 3d 649 (N.D. Cal. 2020) .....................................................2, 4, 15, 20

*Wofse v. Horn*,
    523 F. Supp. 3d 122 (D. Mass. 2021) .....................................................................14

*Yousuf v. Samantar*,
    699 F.3d 763 (4th Cir. 2012) ................................................................................5, 8

**Statutes**

18 U.S.C. § 2.............................................................................................................16

18 U.S.C. § 1030(a)(5)(A)..................................................................................15, 16

18 U.S.C. § 1030(c)(4)(A)(i)(I) ...............................................................................14

18 U.S.C. §§ 1030(c)(4)(A)(i)(III-IV) .................................................................................14

18 U.S.C. 1030(e)(11) ..........................................................................................................14

18 U.S.C. § 1030(g) ..............................................................................................................14

**Other Authorities**

88 Fed. Reg. 18957 (Mar. 27, 2023) ...................................................................................12

Fed. R. Civ. P. 3 ...................................................................................................................13

Fed. R. Civ. P. 4(k)(2)(B) ....................................................................................................3

Fed. R. Civ. P. 12(e) ............................................................................................................3

Restatement (Second) of Torts § 46 cmt. ............................................................................18

## INTRODUCTION

Plaintiff provides no valid basis for this Court to entertain her claims against a foreign defendant, based on foreign conduct, challenging the purely sovereign activities of foreign governments. Plaintiff complains about the UAE's and Saudi Arabia's alleged use of NSO's technology, but she pleads no facts establishing that *NSO* ever accessed her phone, let alone that it did so while she lived in Virginia. That means this Court lacks personal jurisdiction. And because Plaintiff's allegations are explicit that her phones were accessed by foreign governments acting in their governmental capacity, her claims are barred by foreign sovereign immunity and the act of state doctrine. The foreign nature of Plaintiff's claims likewise renders this forum improper under *forum non conveniens*. Plaintiff also does not plead sufficient facts to state any claim against NSO. For all these reasons, Plaintiff's claims should be dismissed.

## ARGUMENT

### I.   PLAINTIFF IDENTIFIES NO BASIS FOR PERSONAL JURISDICTION.

#### A.   NSO is not subject to specific jurisdiction.

Plaintiff does not argue NSO is subject to general personal jurisdiction in Virginia, and she does not identify any factual allegations that could support specific jurisdiction in Virginia. She relies on her purported Virginia residence, but that is insufficient under *Walden v. Fiore*, 571 U.S. 277 (2014). Because a plaintiff cannot "satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State," *id.* at 284, Plaintiff's alleged "contacts with the forum . . . *cannot be decisive*," no matter how "significant" she claims them to be, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 133 (4th Cir. 2020). Plaintiff does not acknowledge *Walden*, let alone satisfy its controlling test for specific jurisdiction. Under that test, Plaintiff must establish that NSO targeted "the forum State itself," not just "persons who reside there*." UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 351 (4th Cir. 2020).[1]

---

[1] *UMG* identified seven "factors" relevant to "purposeful availment," none of which Plaintiff addresses and none of which support jurisdiction here. 963 F.3d at 352. Plaintiff's cases involve

Plaintiff does not allege any facts showing that NSO targeted Virginia. (Mot. 9-10.) Her argument otherwise relies on "mere conclusions," which the Court must disregard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); (*see* Compl. ¶¶ 36, 42, 47). The only well-pleaded factual allegations in the Complaint allege that the UAE and Saudi Arabia—not NSO—accessed Plaintiff's phones. (*E.g.*, Compl. ¶¶ 102, 106, 108, 113, 129.) NSO has submitted evidence that it did not—indeed *could not*—use Pegasus to access Plaintiff's phones. (Shohat Decl. ¶¶ 11, 13, 14.) Plaintiff submits no contrary evidence; her declarant does not contradict NSO's evidence that it does not operate Pegasus and that Pegasus *cannot be used* in the U.S. or on U.S. devices. (Marczak Decl. ¶ 16; Shohat Decl. ¶¶ 11, 13, 14.)[2] Plaintiff does not identify any of the supposed "publicly available information" she references. (Opp. 3.) *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 670 (N.D. Cal. 2020), is irrelevant because WhatsApp sued NSO for allegedly using WhatsApp's servers to research and develop Pegasus. Plaintiff makes no such allegations.

Nor does Plaintiff allege she lived in Virginia when her phones were accessed. She admits she was *not* a Virginia resident at the time of the UAE's alleged attempts to install Pegasus on her phones. (Opp. 4.) The Complaint does not allege that Plaintiff moved to Virginia until, at the *very* earliest, June 2018. (Compl. ¶ 15.) Moreover, a podcast featuring Plaintiff claims she did not move to the U.S. until she decided to seek asylum after Jamal Khashoggi was killed in October 2018. (Supp. Akro. Decl. Exh. A.)  Plaintiff lived in Dubai in April 2018; *traveled* to Washington, D.C., in June 2018 to marry Mr. Khashoggi in a religious ceremony but "did not have residence in the U.S. at the time"; and only moved to the United States after Mr. Khashoggi was killed. (*See id.*)

---

repeated, substantial, and intentional conduct by defendants in Virginia. *See id.* at 353 (defendant operated a website that relied on visitors from Virginia, had a direct commercial relationship with the website visitors, and ran ads specifically targeted at Virginia); *Verizon Online Servs. v. Ralsky*, 203 F. Supp. 2d 601, 616 (E.D. Va. 2002) (defendant sent "millions" of spam emails through plaintiff's servers in Virginia). Plaintiff alleges no analogous conduct by NSO.
[2] Plaintiff also cites to three Internet articles, none of which is competent evidence and none of which contradicts NSO's evidence. (Opp. 4 n.2.) The first article reports that the U.S. government licensed NSO technology for use *in Mexico*. The second article re-links to the first. The third article was co-authored by Marczak, who acknowledges that he has no basis to rebut NSO's evidence.

| Timeline of Plaintiff's Residence | | |
| --- | --- | --- |
| **Date** | **Event** | **Residence** |
| November 2017 | The UAE allegedly "attempts" to install Pegasus by sending Plaintiff "disabled Pegasus link[s]." (Compl. ¶¶ 101-03.) | Dubai |
| April 2018 | The UAE allegedly sends "more malicious text messages." (Compl. ¶ 105.) | Dubai |
| April 2018 | The UAE allegedly seizes Plaintiff and tries to "manually install[]" Pegasus on her phone. (Compl. ¶ 106.) | Dubai |
| June-Oct. 2018 | Plaintiff travels "often," while her communications with Mr. Khashoggi are allegedly "available to"—though not necessarily accessed by—the UAE. (Compl. ¶¶ 111-15.) | Dubai |
| October 2018 | Mr. Khashoggi is killed (Compl. ¶ 117), and Plaintiff moves to Virginia *after* his death (Supp. Akro. Decl. Exh. A). | Virginia |

This timeline confirms Plaintiff does not and cannot allege that her phones were accessed while she lived in Virginia.[3] Her "unilateral" choice to move there *after* Pegasus was allegedly installed on her phone in the UAE cannot support specific jurisdiction. *Walden*, 571 U.S. at 286.

**B.      NSO is not subject to jurisdiction under Rule 4(k)(2).**

Plaintiff's attempt to rely on Rule 4(k)(2) fares no better. Only Plaintiff's CFAA claim "arises under federal law," Fed. R. Civ. P. 4(k)(2), and Plaintiff does not explain why exercising supplemental jurisdiction over her other six state-law counts would be appropriate. Nor does Plaintiff try to demonstrate, as she must, "that [NSO] is not subject to personal jurisdiction in any state." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 215 (4th Cir. 2002). Whether NSO is subject to personal jurisdiction in California is currently being litigated in other cases, as referenced by Plaintiff in her complaint. *See id.* ("[T]he problem here is that to determine that another state lacks jurisdiction would require us to decide a question currently pending before at least one of our sister circuits.").

More fundamentally, Plaintiff does not identify any contacts by NSO with the United States that could support specific jurisdiction "consistent with the United States Constitution." Fed. R. Civ. P. 4(k)(2)(B). She alleges only that NSO was once owned by a California investment fund,

---

[3] If the Court concludes that Plaintiff's residence could support personal jurisdiction, it should permit NSO to take a short deposition of Plaintiff to clarify when she moved to Virginia. Or, the Court should order Plaintiff to provide a more definite statement. Fed. R. Civ. P. 12(e).

an NSO affiliate[4] marketed various technologies to certain local and federal government agencies, and NSO sought assistance from U.S. consultants when placed on the Entity List. (Compl. ¶¶ 30-31.) Those minor contacts cannot support specific jurisdiction because none of Plaintiff's claims relate to or "arise out of" them. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). Nor does any claimed use by NSO of WhatsApp servers in California relate to or give rise to her claims (Opp. 6 (citing *WhatsApp*, 472 F. Supp. 3d at 670)),[5] because she alleges the UAE installed Pegasus on her phone manually. (Compl. ¶¶ 102, 106.)

**C.    The exercise of jurisdiction would not be reasonable.**

Exercising specific jurisdiction over NSO in Virginia would be unreasonable. Plaintiff does not dispute the substantial burdens that NSO faces. (Mot. 11-14.) She focuses on her own convenience (Opp. 4-5), but "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs." *Walden*, 571 U.S. at 284. "[P]laintiff's convenience alone cannot justify the heavy burden on [NSO] which the assertion of personal jurisdiction would impose." *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 661 (4th Cir. 1989). And Plaintiff's convenience is limited by the fact that she is a foreign citizen who lived in Dubai, not Virginia, when supposedly injured. And her burdens in Israel are not "equal" to NSO's burdens in Virginia. (Opp. 5 n.3.) While Plaintiff may be required to engage Israeli counsel, she would not be precluded from meaningfully participating in her case by U.S. and Israeli legal restrictions, as NSO will be if forced to litigate in Virginia. To the contrary, she would be more likely to receive evidence ███████████████████████ ██████ (Blecher Decl. ¶ 12), her Israeli counsel would be able to receive materials subject to Israeli export controls, and neither Citizen Lab (a Canadian institution) nor her Israeli counsel nor NSO's Israeli counsel would be bound by U.S. export controls.

---

[4] Westbridge Technologies, Inc. is not a subsidiary of NSO. (Compl. ¶ 30.) The sources cited in the Complaint confirm that Westbridge is merely a corporate affiliate owned by the same ultimate parent company as NSO and that NSO does not control Westbridge. (Compl. ¶ 30 n.3.)
[5] Plaintiff cannot rely on unproven allegations from *WhatsApp* to support her claims here. *Corbitt v. Baltimore City Police Dep't*, 2023 WL 3793997, at *5 (D. Md. June 2, 2023).

## II.    NSO IS IMMUNE FROM SUIT.

This Court is bound by *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000), which entitles private entities such as NSO to foreign sovereign immunity as an alleged agent of the UAE and Saudi Arabia. (Mot. 6-8.) This Court cannot disregard *Butters* based on the non-binding decision in *WhatsApp Inc. v. NSO Grp. Techs. Ltd*., 17 F.4th 930 (9th Cir. 2021), which erroneously held that the FSIA forbids private entities from seeking foreign sovereign immunity under the common law. The Supreme Court has stated that the FSIA does *not* "supersede" common-law immunity when a defendant is not "a foreign state as the [FSIA] defines that term." *Samantar v. Yousuf*, 560 U.S. 305, 320, 325 (2010). Private entities like NSO are not "foreign state[s]," so their immunity is "governed by the common law." *Id.* The Ninth Circuit's decision thus conflicts with *Samantar* and with the D.C. Circuit's recognition that claims of immunity by "private entities" must "rise or fall not under the FSIA, but the residual law and practice that the FSIA did not displace." *Broidy Cap. Mgmt. LLC v. Muzin*, 12 F.4th 789, 802 (D.C. Cir. 2021).

For similar reasons, *Samantar* did not overrule or undermine *Butters*. *Samantar* nowhere rejects *Butters*'s holding that private entities are immune when they act as foreign governments' agents; *Samantar* merely requires the source of that immunity to be the "common law," not the FSIA. 560 U.S. at 324. For that reason, *Butter*s, like other pre-*Samantar* decisions interpreting the FSIA, remains "instructive for post-*Samantar* questions of common law immunity." *Yousuf v. Samantar*, 699 F.3d 763, 774 (4th Cir. 2012). Until the Fourth Circuit overrules *Butters*, this Court remains bound by its holding that private agents are immune "when following the commands of a foreign sovereign employer." *Butters*, 225 F.3d at 466.[6]

Nor can *Butters* be distinguished. Although *Butters* involved an American company, Plaintiff offers no rationale for *limiting* common-law immunity to such companies. (Opp. 8); *see*

---

[6] To the extent Plaintiff argues that only government *officials* may receive common-law immunity (Opp. 7), *Butters* foreclosed that argument by extending immunity to a private entity. "[C]ourts define the scope of immunity by the nature of the function being performed—not by the office or the position of the particular employee involved." *Butters*, 225 F.3d at 466; *accord Herbage v. Meese*, 747 F. Supp. 60, 66 (D.D.C. 1990); *Rishikof v. Mortada*, 70 F. Supp. 3d 8, 13 (D.D.C. 2014).

*Moriah v. Bank of China Ltd.*, 107 F. Supp. 3d 272, 277 & n.34 (S.D.N.Y. 2015) (applying common-law immunity under *Butters* to Israeli agent of Israel). *Butters* relied on the "need" of "foreign sovereigns" for "flexibility to hire private agents," and conditioning immunity on a foreign government's use of American agents would limit that flexibility and "significantly impede" those governments' "sovereign interest[s]." 225 F.3d at 466.

Plaintiff's argument that *Butters* does not apply because "NSO's actions at issue were of a commercial nature" (Opp. 8) misstates the facts and law. Plaintiff expressly challenges the UAE's alleged use of NSO's technology to gather intelligence, which is "peculiarly sovereign conduct." *Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 595 (9th Cir. 2020). That conduct is not rendered "commercial" by NSO's prior alleged licensing of Pegasus. *Id.* at 594. That alleged licensing, standing alone, "entitle[s] [Plaintiff] to nothing under [her] theory of the case." *Id.* (cleaned up) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 358 (1993)). The "basis for [Plaintiff's] suit" is the UAE's alleged *use* of Pegasus, so any "arguably commercial activities that preceded" that use are not relevant to immunity. *Id.* (cleaned up) (quoting *Nelson*, 507 U.S. at 358).

Furthermore, as pleaded, NSO's challenged actions were "directed or controlled by a foreign state." (Opp. 8.) Plaintiff alleges the use of Pegasus against her was controlled by the UAE and Saudi Arabia, and she cannot challenge NSO's alleged design or licensing of Pegasus independent of the technology's *use*. In any event, nothing in *Butters* requires that the party seeking immunity act under "direct orders." Rather, *Butters* held that foreign agents are immune when they "act[] within the scope of their employment," and it granted immunity not because the defendant followed "direct orders," but because a foreign government "was responsible for the decision" challenged by the plaintiff. 225 F.3d at 466-67. Plaintiff alleges Saudi Arabia and the UAE, not NSO, made the alleged decision to monitor her devices. Under *Butters*, NSO is immune for allegedly "aid[ing] [foreign governments] in conducting their government functions." *Id.* at 466.

## III.    THE ACT OF STATE DOCTRINE BARS PLAINTIFF'S CLAIMS.

The act of state doctrine bars Plaintiff's challenges to the alleged misuse of NSO's technology by the UAE and Saudi Arabia. (Mot. 14-16); *see Du v. Cisco Sys.*, 2 F. Supp. 3d 717,

720, 726 (D. Md. 2014). Plaintiff advances four contrary arguments, but none has merit.

*First*, NSO's status "as a private company" (Opp. 9) is irrelevant. A "private litigant may raise the act of state doctrine, even when no sovereign state is a party to the action." *IAM v. OPEC*, 649 F.2d 1354, 1359 (9th Cir. 1981). This District and others within this Circuit have applied the act of state doctrine to claims brought against private entities. *See, e.g., AdvanFort Co. v. Cartner*, 2015 WL 12516240, at *7 (E.D. Va. Oct. 30, 2015); *Du*, 2 F. Supp. 3d at 726. Those same decisions also defeat Plaintiff's argument that NSO's alleged licensing of Pegasus is "commercial" conduct. (Opp. 9.) As in *Du*, 2 F. Supp. 3d at 726, Plaintiff sues NSO because it designed and licensed a technology that foreign governments allegedly misused. NSO's design and licensing of Pegasus, standing alone, cannot support any of Plaintiff's claims absent her allegations that the UAE and Saudi Arabia *used* Pegasus. That alleged *use* is a governmental act. *Broidy*, 982 F.3d at 595.[7] Plaintiff thus necessarily "ask[s] the Court to decide" that the UAE and Saudi Arabia, "with substantial assistance from" NSO, violated the law by misusing Pegasus. *Id.* The act of state doctrine prevents this Court from entertaining that claim.

*Second*, Plaintiff's argument that the UAE and Saudi Arabia did not complete their conduct within their borders (Opp. 9) fails as a matter of law. As this District held in *AdvanFort*, "the fact that a government entity acted outside the physical boundaries of the sovereign will not automatically defeat the doctrine's application." 2015 WL 12516240, at *7. What matters is that the UAE's and Saudi Arabia's alleged conduct was "governmental in nature." *Id.* (cleaned up). Besides, Plaintiff does not in fact allege that the UAE or Saudi Arabia ever *did* access Plaintiff's device in Virginia because she does not allege that she lived in Virginia at the relevant times. Plaintiff lived in Dubai—within the UAE's borders—when the UAE accessed her phones. (*See* Supp. Akro. Decl. Exh. A.)

---

[7] *Eckert Int'l, Inc. v. Fiji*, 834 F. Supp. 167, 169 (E.D. Va. 1993), was a breach of contract action challenging Fiji's repudiation of certain contractual obligations. *Id.* at 169. The plaintiff thus challenged Fiji's "commercial" act of entering into a contract. *Id.* at 171-72. Here, Plaintiff challenges a government's alleged *use* of NSO technology to further governmental purposes.

*Third*, the act of state doctrine applies even though Plaintiff does not seek a judgment or relief directly against a foreign state. (Opp. 10.); *see Du*, 2 F. Supp. 3d at 726. The doctrine applies "whenever the federal courts must question the legality of the sovereign acts of foreign states." *IAM* 649 F.2d at 1359.[8] Here, the "outcome of the case turns upon" a finding that the UAE and Saudi Arabia broke the law by using Pegasus to access Plaintiff's devices. *W.S. Kirkpatrick & Co. v. Envt'l Tectonics Corp.*, 493 U.S. 400, 406 (1990). The act of state doctrine thus applies. *Id.*

*Fourth*, Plaintiff cites no support for her assertion that "foreign surveillance" of the kind alleged here "violates *jus cogens* norms." (Opp. 10-11.) In fact, "[t]he status of peacetime espionage under international law is a subject of vigorous debate," so there is no "clear rule of international law that would impose a mandatory and judicially enforceable duty" against foreign governments' use of Pegasus. *Broidy*, 982 F.3d at 592. Whether or not the alleged "extrajudicial killing" of Mr. Khashoggi was a *jus cogens* violation (Opp. 10-11),[9] Plaintiff sues NSO for the UAE's alleged use of Pegasus to access her phones, not for Mr. Khashoggi's killing. He was killed at the Istanbul consulate after voluntarily traveling there and personally informing Saudi officials of his location. (Mot. 23-24.) Plaintiff does not allege any facts tying NSO's alleged conduct to his death.[10] She alleges only that NSO developed and licensed to foreign governments an "inherently neutral technology that can clearly be used in a variety of non-offensive ways." 2 F. Supp. 3d at 725. She cannot sue NSO for governments' alleged misuse of that technology. *Id.* at 726.

## IV. *FORUM NON CONVENIENS* REQUIRES DISMISSAL.

This case should be dismissed for *forum non conveniens* because the combination of U.S.

---

[8] If the act of state doctrine applied only when a plaintiff directly sought relief from a foreign state, it would serve no purpose—such claims are independently barred by foreign sovereign immunity.
[9] The United States has declared Crown Prince of Saudi Arabia to be immune from suit over any alleged role in the killing. *Cengiz v. Salman*, 2022 WL 17475400, at *4-7 (D.D.C. Dec. 6, 2022).
[10] That distinguishes *Warfaa v. Ali*, 33 F. Supp. 3d 653, 662 (E.D. Va. 2014), in which the defendant personally tortured and "attempted to kill [the] plaintiff." The other cases Plaintiff cites also involved acts of torture or similarly repugnant conduct. *Yousuf*, 699 F.3d at 775-76; *Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 554-55 (N.D. Cal. 2021). Plaintiff cites an amicus brief from *WhatsApp* (Opp. 11 n.7), but it never mentions *jus cogens*. *See* Brief for David Kaye, *NSO Grp. v. WhatsApp, Inc.*, No. 20-16408 (9th Cir. Dec. 23, 2023).

and Israeli legal restrictions render NSO unable to defend itself in this Court. (Mot. at 16-22.)

*Adequate alternative forum*. Plaintiff identifies no basis to reject the uniform holdings of numerous U.S. courts that Israel is an available, adequate alternative forum. (Mot. 16 & n.3.) Because NSO is amenable to jurisdiction in Israel, it would be unavailable or inadequate under only "rare circumstances." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011). No such circumstances exist here.

*First*, Plaintiff's personal circumstances do not render Israel inadequate. Her own cited materials confirm that she may travel outside of the United States by obtaining "advance parole." (Opp. 12 n.8.) Plaintiff fails to argue she would be denied parole or explain why she could not make initial appearances through her Israeli counsel or by videoconferencing while her asylum application is processed. Nor does Plaintiff offer any credible argument that traveling to Israel would expose her to emotional or physical harm. Plaintiff is not being asked to travel to the UAE, Saudi Arabia, Turkey, or any other country where she or Mr. Khashoggi previously faced a risk of physical violence as a result of "the events giving rise to the claim." *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 805 (4th Cir. 2013). Plaintiff presents no evidence that she is at risk of "extraordinary rendition" in Israel, a Western-style democracy that her own authorities recognize as a safe alternative forum. *Id.* at 805. Nor is Plaintiff an American citizen (Compl. ¶ 6), which is a prerequisite to invoking this particular factor. *DiFederico*, 714 F.3d at 805.

*Second*, Plaintiff identifies no basis to conclude that Israeli courts would prevent her from "obtaining any meaningful relief." A forum is not inadequate simply because Plaintiff "may not enjoy the same benefits as [she] might receive in an American court." *Tang*, 56 F.3d at 249; *see Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (Argentina adequate despite "the lack of discovery in Argentine courts"); *Lockman Found. v. Evangelical All. Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (Japan adequate despite objection that "there is no pretrial discovery in Japan"). If extensive "American style discovery" were a prerequisite, "few foreign forums could be considered 'adequate'—and that is not the law." *Potomac Cap. Inv. Corp. v. Koninklijke Luchtvaapt Maatschapplj N.V.*, 1998 WL 92416, at *5 (S.D.N.Y. Mar. 4, 1998). The

9

Amnesty International suit cited by Plaintiff was dismissed on the merits, and she provides no evidence that the dismissal was improper. Without some actual evidence of pervasive bias on the part of Israeli judges, speculation that they "would violate their oaths of office" cannot not render a forum inadequate. *Sussman v. Bank of Israel*, 801 F. Supp. 1068, 1078 (S.D.N.Y. 1992), *aff'd*, 990 F.2d 71 (2d Cir. 1993). There are currently two suits pending against NSO in Israel related to the use of Pegasus, one of which has already proceeded beyond a motion to dismiss.[11] Accordingly, Plaintiff cannot credibly claim that Israeli courts would reflexively deny her relief.

*Private factors.* Plaintiff does not rebut NSO's showing that the private factors strongly favor dismissal. (Mot. 17-21.)   Contrary to Plaintiff's argument, litigation in Israel would substantially reduce the burdens that prevent NSO from participating in this case. The burdens posed by Israel's Defense Export Control Law ("DECL") would be essentially eliminated in Israel, and ███████████████████████████████████████████ would be substantially lessened.[12] (Blecher Decl. ¶ 12.) And Plaintiff does not seriously dispute that NSO's placement on the BIS Entity List prevents it from communicating with its U.S. defense counsel and preparing a defense.  Plaintiff argues only that she would need a U.S. export license for Israeli proceedings (Opp. 15), but that is far from obvious, given that any evidence in her possession is not likely controlled technology or software and that neither her Israeli counsel nor Citizen Lab are subject to U.S. export control laws. But even if Plaintiff were correct about U.S. export controls, she *already needs the same export license in this litigation*—to produce technical documents from her experts to NSO, to question NSO deponents about technical matters, and to introduce export-controlled evidence in NSO's presence at trial. So while litigation in Israel would allow NSO to participate in its own defense, it would not impair Plaintiff's access to evidence in any way.

Plaintiff also cannot deny that there is generally no process available to compel unwilling

---

[11] C.A. 2401-12-18 Elaziz v. NSO Group et al.; C.A. 61866-08-18 Una v. NSO Group et al.

[12] ███████████████████████████████████████████████████████████████
██████████████████ (Blecher Decl. Exh. C at ¶¶ 3, 4(a).) ██████████
████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████ (*See id.* ¶ 4(b).)

Israeli witnesses to appear in person in Virginia.  NSO need not identify the witnesses it would call, the testimony that would be provided, or other such details. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).  Indeed, dismissal may be required "precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview." *Id.* And here, NSO submitted evidence that Israeli witnesses could be subject to criminal penalties for violating DECL in the absence of appropriate licenses. (Blecher Decl. ¶ 12.) Witness testimony could also ███████████████████████. Accordingly, major disincentives to voluntary testimony exist, which is sufficient to establish any unwillingness to testify. *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006).

Plaintiff's reliance on the possibility of depositions is irrelevant because the question is whether unwilling witnesses can be compelled to appear for "live in-person testimony," from which the fact-finder can evaluate credibility. *Interface Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 105 (1st Cir. 2009). In any event, depositions are not generally available in Israel (Blecher Decl. ¶ 11), and the majority of its current document custodians are Israeli former employees not subject to deposition as current managers or directors. Those same Israeli witnesses generally will not be compelled to appear for depositions under the Hague Convention. (*Id.*) Although Plaintiff suggests a single court successfully obtained testimony, the cited opinion contains no evidence that any deposition actually occurred or was successfully introduced at trial. *See Estate of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 255 (D.D.C. 2011). Finally, Omri Lavie is not an NSO employee, an American citizen, or even a U.S. resident.

Even if some witnesses were willing to testify, Plaintiff appears to concede that NSO would face substantial costs in transporting and lodging those witnesses. Plaintiff would not face the same burden if this matter were litigated in Israel, as she has far fewer witnesses and documents. She claims to have "significant evidence" in the United States, but she does not specify what that evidence might be.  The most significant evidence in this matter is in Israel, and the cost on NSO could be alleviated by trial in Israel. Translation costs would also be lower in Israel. NSO would need to translate fewer documents from Hebrew to English, as Plaintiff would have Israeli counsel.

11

And Plaintiff would not need to translate materials into Hebrew, as Israeli courts are "typically proficient in English." *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 878 (3d Cir. 2013).

A judgment against NSO would also be more easily enforced in Israel. Plaintiff does not address NSO's authority that Israeli courts may decline to enforce a U.S. judgment when the losing party lacked a reasonable opportunity to present its case or if enforcing the judgment would harm Israeli sovereignty or security. (Mot. 19.) Her unsupported assertion that "NSO has business interests around the world" is irrelevant. The question is whether the U.S. or Israel could more *easily* enforce a judgment, not whether assets exist in a third location.

*Public factors.* The public factors also favor dismissal. (Mot. 21-22.) Israel's specifically stated national-security interest in litigation against NSO substantially outweighs Virginia's interest, which is limited given that Plaintiff did not move to the state until after the events giving rise to the lawsuit occurred.  It is difficult to understand how the *United States*' general interests could support litigation *in Virginia* specifically, but even if they could the United States has not espoused any interest in this lawsuit. The executive order Plaintiff cites does not mention NSO, let alone endorse private lawsuits against it. 88 Fed. Reg. 18957 (Mar. 27, 2023).

Nor are Virginia courts more familiar with the governing law.  Plaintiff says her claims are governed by U.S. and Virginia law, but she performs no choice-of-law analysis, and her assertion is based on the incorrect assumption that a tort was committed within Virginia. (Opp. 18-19.) Plaintiff herself has acknowledged that she was a resident of Dubai during the relevant time period. (*See supra* § I.A.)  But even if Virginia law governed Plaintiff's substantive claims, the Court would still need to interpret both Virginia and Israeli law (such as the Israeli DECL ████████ ████████) throughout discovery and trial. Israeli courts are more familiar with their own export-control ████████████████, while also being perfectly qualified to apply U.S. or Virginia law. (Blecher Decl. ¶ 10); *see Cheng v. Boeing Co.*, 708 F.2d 1406, 1411 (9th Cir. 1983) ("Taiwan tribunal is competent to decide questions of American law").

In these circumstances, when Israel has a substantially stronger interest and Virginia has almost none, this Court should not bear the burden of this suit. Although Plaintiff suggests that

this Court has previously handled complicated trials, she provides no indication as to how trial would proceed given the current U.S. export restrictions, and NSO does not "concede" that a trial in Israel would take longer. It is difficult to imagine how a trial before this Court could proceed at all with NSO present, because virtually any information about any technology (even NSO's own) cannot be discussed or displayed in NSO's presence. It is also difficult to determine how long it will take the parties to reach trial, given that ██████████████████████████████ ████████████████████████████████████████ and that most deposition requests will need to be made through the Hague Convention. These delays would be lessened in Israel, where courts entertain less pretrial discovery and can employ certain procedural safeguards █ █████████████████████. (*Id.* ¶¶ 11-12.)

## V.    THE COMPLAINT FAILS TO STATE A CLAIM.

### A.    Plaintiff does not state a CFAA claim.

***Plaintiff lacks statutory standing.***  Plaintiff cannot sue under the CFAA because she does not allege she suffered "damage" or "loss" as the CFAA defines those terms. (Mot. 22-23.) The only "damage" Plaintiff claims to have suffered is "the installation of Pegasus on a device" (Opp. 25), but she cites no authority for that argument. Courts agree the mere installation of spyware is not "damage" absent "alteration or erasure" of "data." (Mot. 22 & n.15); *e.g.*, *Phreesia, Inc. v. Certify Global, Inc.*, 2022 WL 911207, at *7-9 (D. Md. Mar. 29, 2022); *Goodman v. Goodman*, 2022 WL 17826390, at *7 (S.D.N.Y. Dec. 21, 2022).[13] Plaintiff does not dispute she has not alleged any such alteration or erasure of her data.

Plaintiff also does not plead "loss." She does not allege *she* incurred any costs in investigating the alleged access to her phones, that Citizen Lab investigated the access at her

---

[13] *United States v. Yücel*, 97 F. Supp. 3d 413, 420 (S.D.N.Y. 2015), predates *Van Buren* and held only that the statute's definition of "damage" is not unconstitutionally vague. It does not support Plaintiff's argument that she has alleged damage. *Shurgard Storage Ctrs. v. Safeguard Self Storage, Inc.*, 119 F. Supp. 3d 1121, 1126-27 (W.D. Wash. 2000), also predates *Van Buren*, and it relied on legislative history rather than statutory text. This Court should instead follow the unbroken modern trend of cases cited in NSO's motion.

behest, or that she paid any "experts" for their investigation. (Opp. 25-26; Compl. ¶¶ 42, 44, 65, 102, 106, 125, 141.)  Plaintiff may not rely on third-party costs to establish her own standing. *See* 18 U.S.C. § 1030(g) (requiring *plaintiff* suffer "damage or loss"); *Walsh v. Microsoft Corp.*, 63 F. Supp. 3d 1312, 1320 (W.D. Wash. 2014) ("Plaintiffs must meet the [$5,000] damages requirement themselves"). Even if she could, she does not plead any basis to conclude those costs were at least $5,000. 18 U.S.C. § 1030(c)(4)(A)(i)(I).[14] Plaintiff also argues she need not plead "loss" because she suffered "physical injury" (Opp. 26), but even if the $5,000 threshold did not apply, Plaintiff still must have suffered *some* "damage or loss." 18 U.S.C. § 1030(g). Plaintiff does not tie NSO's alleged conduct to any "physical injury" or "threat to public health or safety." 18 U.S.C. §§ 1030(c)(4)(A)(i)(III-IV). By her own allegations, the injuries she cites—her interrogation by the UAE and Mr. Khashoggi's killing (Compl. ¶¶ 17, 29, 106-107, 124, 128-30, 147-49)[15]—were caused by the UAE and Saudi Arabia, not by any use of Pegasus. (Mot. 23-24.)[16]

   ***Plaintiff's claim is time-barred.***  Plaintiff agrees that if she does not allege "damage," her CFAA claim is time-barred because the statute of limitations began to run on "the date of the act complained of." (Opp. 26.) Plaintiff does not plead "damage," so her claim is untimely. (Mot. 24.)

   ***Plaintiff alleges no basis for CFAA liability.***  Plaintiff identifies no "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, that NSO accessed her devices in violation of the CFAA. The most relevant allegations she cites claim *the UAE*, not NSO, attempted to access her phones. (Compl. ¶¶ 101-03, 105, 108.) Some allegations discuss NSO but do not allege NSO itself accessed

---

[14] *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *7 (N.D. Cal. Feb. 16, 2021) (rejecting "conclusory" allegation plaintiff lost $5,000); *NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 949 (N.D. Cal. 2014) (dismissing complaint "'devoid of any specific details from which a factfinder could calculate an amount of loss'").

[15] It is unclear whether Plaintiff intends to cite the alleged loss of her job (Compl. ¶¶ 17, 29, 128), but that is not physical injury. It is a "consequential damage[]" that does not qualify as "loss" unless it was caused by "interruption of service." 18 U.S.C. 1030(e)(11); (Mot. 23).

[16] *Hains v. Adams*, 2019 WL 5929259, at *8 (E.D. Va. Nov. 12, 2019), did not involve a "personal injury" claim. *Wofse v. Horn*, 523 F. Supp. 3d 122, 140 (D. Mass. 2021), involved claims that the CFAA violation caused the plaintiff "anxiety, panic attacks, insomnia, and internal bleeding." Plaintiff alleges no physical injury like internal bleeding, and "emotional distress" is not "physical injury." *Ball v. Joy Techs., Inc.*, 958 F.2d 36, 38 (4th Cir. 1991).

14

Plaintiff's devices. (Compl. ¶¶ 42, 65, 123, 129.)[17] The only allegations that accuse NSO of accessing Plaintiff's phones are bare recitations of the elements of her claims. (Compl. ¶¶ 135, 140-41.) Those legal conclusions are not presumed to be true, *Iqbal*, 556 U.S. at 678, and are not supported by Plaintiff's factual allegations.

The *WhatsApp* decision is not to the contrary because WhatsApp specifically alleged that NSO used its servers while designing and testing Pegasus. 472 F. Supp. 3d at 670. NSO did not challenge WhatsApp's allegations about WhatsApp users as inadequately pleaded, but because WhatsApp had not been injured by any access to its users' devices. *Id.* at 682-83. Distinct allegations about different alleged conduct by different plaintiffs in a different case cannot support Plaintiff's CFAA claim here, where Plaintiff alleges no facts that NSO accessed her devices and her own allegations establish that the UAE rather than NSO did so.[18]

Plaintiff also cannot rely on the CFAA's provision creating liability for defendants who "knowingly cause[] the transmission of a program . . . and, as a result of such conduct intentionally cause[] damage without authorization to a protected computer." 18 U.S.C. § 1030(a)(5)(A). Plaintiff alleges no facts suggesting that NSO "knowingly cause[d]" any "transmission" of Pegasus onto her phones. She alleges NSO licensed Pegasus to the UAE, but (as just explained) she pleads no facts that NSO thereafter played any role in installing Pegasus on her devices or accessing her data. She alleges no basis to conclude that, at the time NSO licensed Pegasus to the UAE, it knew the UAE would use Pegasus against Plaintiff or influenced the UAE's decision to do so. For the same reason, Plaintiff does not plead that NSO "intentionally" damaged Plaintiff's phones.

To claim otherwise, Plaintiff suggests that anyone who "design[s]," sells, or even "market[s]" a technology is liable whenever a customer later uses that technology to violate the CFAA. (Opp.

---

[17] One allegation describes a use of Pegasus by another government, which is irrelevant here and does not suggest any involvement by NSO in the use of Pegasus. (Compl. ¶ 58.)

[18] The assertions in the Marczak Declaration (Opp. 22) do not appear in Plaintiff's complaint and cannot be introduced for the first time in her opposition. *Pelletier v. Elam*, 2021 WL 2545462, at *3 n.4 (E.D. Va. June 17, 2021). That aside, nothing in the declaration supports the conclusion that NSO—as opposed to the UAE—accessed Plaintiff's phones.

22 (quoting *Shaw v. Toshiba Am. Info. Sys.*, 91 F. Supp. 2d 926, 935-36 (E.D. Tex. 1999).)[19] That

position finds no support in the CFAA's text. *See Blades of Green, Inc. v. Go Green Lawn & Pest,*

*LLC*, 2023 WL 5278654, at \*5 (D. Md. Aug. 16, 2023); *Koninklijke Philips N.V. v. Elec-Tech Int'l*

*Co.*, 2015 WL 1289984, at \*4 (N.D. Cal. Mar. 20, 2015). Interpreting "transmission" to encompass

designing, selling, or marketing a technology is illogical and ignores the CFAA's "computing

context." *Van Buren*, 141 S. Ct. at 1657. In that context, the term "transmission" plainly refers to

the transmission of a program *onto a protected computer*. Only that interpretation is consistent

with the CFAA's purpose "to target hackers," and with the rule of lenity's demand to "construe

[the CFAA] strictly." *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 207 (4th Cir.

2012). But even if NSO's alleged licensing of Pegasus could qualify as a "transmission," that

licensing was not done "without authorization"—it was approved by Israel—and did not "damage"

Plaintiff. 18 U.S.C. § 1030(a)(5)(A). Plaintiff alleges the UAE's *use* of Pegasus injured her, and

she alleges no facts that NSO knowingly or intentionally caused the UAE to use Pegasus against her.

Plaintiff thus pleads no basis for direct liability under the CFAA. Nor does she plead any

basis for secondary liability. She offers no actual argument for how the CFAA's text supports

aiding-and-abetting liability (Opp. 22-23), and her assertion that it does cannot be squared with

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 181-82

(1994). (Mot. 25-26.)[20] Plaintiff also does not allege any facts supporting a conclusion that NSO

---

[19] Even in *Shaw* the "transmission" was the sale to consumers of a computer containing faulty code that damaged the computer, not the sale of technology that a third party then independently *used* to damage other people's computers. 91 F. Supp. 2d at 932-33. The dicta Plaintiff cites from *Attkisson v. Holder*, 2017 WL 5013230, at \*12 (E.D. Va. Nov. 1, 2017) (Brinkema, J.), did not endorse Plaintiff's argument. This Court dismissed the CFAA claim because "there [was] no plausible allegation that either [defendant] personally 'accessed' plaintiffs' computers." *Id.* In any event, the *Attkisson* dicta does not apply here, where the UAE and Saudi Arabia are not NSO's "subordinates" and Plaintiff does not allege NSO "direct[ed]" the UAE's use of Pegasus. *Id.*

[20] Plaintiff does not acknowledge *Central Bank*, and neither do the cases she cites. *COR Sec. Holdings Inc. v. Banc of Cal.*, 2018 WL 4860032, at \*7 (C.D. Cal. Feb. 12, 2018), erroneously relied on aiding-and-abetting liability "for criminal violations," which depends on 18 U.S.C. § 2, *not* on the CFAA. *See Cent. Bank*, 511 U.S. at 181-82. In *Joe N. Pratt Ins. v. Doane*, 2008 WL

aided and abetted the UAE's use of Pegasus against Plaintiff or that NSO conspired with the UAE

to do so. Plaintiff simply asserts, in the abstract, that NSO helps its clients set up Pegasus. (Opp.

23-24.) But she does not allege NSO did any of those general things *for the UAE in this case.*

(Compl. ¶¶ 46-48, 66-71.) And to plead aiding-and-abetting or conspiracy liability, Plaintiff must

allege more than that NSO set up Pegasus for the UAE and instructed the UAE on how to use

Pegasus generally. Plaintiff must instead plead that NSO specifically knew about, agreed to, and

intended the *specific* use of Pegasus *against Plaintiff*. (Mot. 25-26.) Plaintiff alleges no such facts,

and her opposition does not claim otherwise.[21]

### B.      Plaintiff cannot apply Virginia law extraterritorially.

Both Virginia law and the Due Process Clause of the U.S. Constitution prohibit the

extraterritorial application of Virginia law to NSO. (Mot. 26-27.) Plaintiff denies this fundamental

rule, but she provides no support for her suggestion that "Virginia law" may be applied

extraterritorially. (Opp. 6.) She does not address the Virginia Supreme Court's holdings that state

law cannot be given "extraterritorial effect," *Sherley v. Lotz*, 200 Va. 173, 176 (1958); *W. Union

Telegraph Co. v. Davis*, 114 Va. 154, 156 (1912), and even if *Westwind Acquisition Co. v.

Universal Weather & Aviation, Inc*., 668 F. Supp. 2d 749, 752 (E.D. Va. 2009), involved Texas

law, it enforced the general proposition that "state laws are intended to apply only within the state's

territorial jurisdiction and not extraterritorially." Plaintiff cites no authority that Virginia law is to

the contrary. Even if it were, the Due Process Clause of the U.S. Constitution would still prohibit

---

819011, at *10 (S.D. Tex. Mar. 20, 2008), the defendants do not appear to have argued that the
CFAA does not authorize civil aiding and abetting liability. *Facebook, Inc. v. Power Ventures,
Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016), and *Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL
4205476, at *17 (E.D. Pa. Sep. 19, 2012), do not address aiding and abetting liability, but instead
hold that a defendant can *directly* violate the CFAA by ordering a third party to access a computer
on the defendant's behalf. Plaintiff does not allege that NSO directed the UAE's or Saudi Arabia's
conduct to access her phones or that those governments were acting on NSO's behalf.

[21] That distinguishes *Al Shimari v. CACI Premier Tech., Inc.*, 324 F. Supp. 3d 668, 697 (E.D. Va.
Feb. 21, 2018) (Brinkema, J.), in which the defendants allegedly knew about and assisted the
specific abuse of the specific plaintiffs at issue. The defendant in *Phreesia* did not challenge the
plaintiff's allegations of conspiracy, which alleged that each defendant specifically agreed to
access the plaintiff's computer. 2022 WL 911207, at *3, 5-6, 10.

Virginia from applying its law extraterritorially. (Mot. 27.) Plaintiff has no response to that point.

Nor does Plaintiff identify any factual allegations showing that NSO's conduct occurred in Virginia. As explained above, she alleges only that the UAE tried to access her phones, and she did not live in Virginia when that allegedly occurred. NSO's alleged conduct—designing and licensing Pegasus—did not occur in Virginia.[22] Virginia law cannot apply to that foreign conduct.

### C.    Plaintiff does not state a VCCA claim.

Plaintiff's VCCA claim fails because, as with her CFAA claim, she does not allege that *NSO*—as opposed to the UAE—accessed her "computer . . . without authority" or "caused" any such access. (Opp. 27; *supra* § V.A.) Nor does she dispute that the VCCA does not apply to foreign governments, which alone forecloses her attempt to hold NSO secondarily liable. (Mot. 27; Opp. 27.) She identifies no basis for secondary liability under the VCCA's text,[23] and she does not allege facts showing that NSO conspired with or aided and abetted the UAE or Saudi Arabia. (*Supra* V.A.)

### D.    Plaintiff does not state an IIED claim.

Plaintiff cannot state a claim for IIED because her claim is based solely on NSO's Israel-approved licensing activities (Opp. 28; *see* Compl. ¶ 46 n.14 ("Deals with foreign clients require 'direct written approval from the government of Israel.'")), which fall far short of the "outrageous" conduct required by Virginia law. (Mot. 28.)[24] Plaintiff's allegation of "fear, anxiety, and extreme

---

[22] That renders irrelevant *Adventure Communications, Inc. v. Kentucky Registry of Election Finance*, 191 F.3d 429, 438 (4th Cir. 1999), which applied Kentucky law to broadcasters with stations located in Kentucky who directed advertisements for Kentucky gubernatorial candidates to Kentucky residents. Plaintiff alleges no similar Virginia connect to NSO's alleged conduct.

[23] Whether the VCCA authorizes "consequential damages" (Opp. 27) has no conceivable relevance to whether it authorizes secondary liability.

[24] *Cf. Cockrum v. Donald J. Trump for President, Inc.*, 365 F. Supp. 3d 652, 671 (E.D. Va. 2019) (allegations that defendant conspired with Russian hackers to release non-public communications not "extreme and outrageous" as a matter of law). Even assuming otherwise, NSO cannot be liable for exercising the legal rights that the Government of Israel affords it. *See* Restatement (Second) of Torts § 46 cmt. g (1965) ("[C]onduct, although it would otherwise be extreme and outrageous, may be privileged under the circumstances. The actor is never liable, for example, where he has

stress" (Compl. ¶ 184) is also insufficient to plead severe distress under Virginia law. (Mot. 28.)[25]
*Hatfill v. New York Times Co.*, 416 F.3d 320, 337 (4th Cir. 2005), held otherwise by relying on the
outdated *Conley* pleading standard. Accordingly, *Hatfill* and cases citing it do not preclude
dismissal here under *Twombly* and *Iqbal*. *Fuller v. Aliff*, 990 F. Supp. 2d 567, 681 (E.D. Va. 2013);
*Smith v. Sam Carbis Sols. Grp.*, 2017 WL 874983, at *2 (D.S.C. Mar. 6, 2017).

Plaintiff also does not explain how NSO's licensing activities were "directed at" her. (Mot.
28.) And she identifies no causal connection between NSO's licensing and her claimed distress.
Mr. Khashoggi was eventually located at the Istanbul consulate, where he voluntarily traveled to
seek a license to marry a Turkish woman. (Mot. 23-24.) Plaintiff cannot explain how information
gathered from her devices would have been necessary to locate him.

### E.    Plaintiff does not state any negligence-based claim.

Plaintiff's negligence claims should be dismissed because she does not identify any legal
duty that NSO owed or violated. Plaintiff concedes she must plead a "special relationship" (Opp.
29; Mot. 29), and no such relationship exists here. The Supreme Court of Virginia has "exercised
caution in expanding" the list of special relationships, which does not encompass NSO's alleged
relationships with Plaintiff, the UAE, or Saudi Arabia. *Burns v. Gagnon*, 283 Va. 657, 668-69
(2012). Plaintiff cites no authority expanding the list to include businesses that, like NSO, takes
steps to ensure that their products are properly used.[26] Plaintiff's allegations with respect to
"NSO's public statements" far fall short of the relationship in the only case she cites; she does not
and cannot allege that NSO has "take[n] charge over" or "control[s] the behavior of" the foreign
governments to which it licenses Pegasus. (Opp. 29 (quoting *Satterfield v. Wells Fargo Bank*, 2023

---

done no more than to insist upon his legal rights in a permissible way, even though he is well aware
that such insistence is certain to cause emotional distress.").
[25] The other alleged "harms" she cites, such as the loss of her job and her need to seek political
asylum, are not emotional distress. (Opp. 29.) Nor are they related to NSO's licensing of Pegasus.
[26] Such a rule also has no good policy rationale, since it would *discourage* companies from taking
such protective steps.

U.S. Dist. LEXIS 85081, at *7 (E.D. Va. May 15, 2023).)[27]

Plaintiff does not address her claim for negligent infliction of emotional distress. She does not dispute that the claim requires a "physical injury" or that she has alleged no such injury. (Mot. 29.) That requires dismissal.

### F.    Plaintiff does not state a claim for trespass to chattels.

Plaintiff's claim for trespass to chattels should be dismissed because, as with her CFAA and VCCA claims, she does not allege *NSO* ever accessed her phones. (Mot. 29.) In addition, she does not allege her phones were "impaired as to [their] condition, quality, or value." *Microsoft Corp. v. John Does 1-8*, 2015 U.S. Dist. LEXIS 110145, at *26 (E.D. Va. July 20, 2015); (Mot. 30). That requires "*physical* harm or impairment to [her] phones." *Fields v. Wise Media, LLC*, 2013 WL 5340490, at *5 (N.D. Cal. Sept. 24, 2013) (emphasis added); *see WhatsApp*, 472 F. Supp. 3d at 684. For example, the plaintiff in *Microsoft* adequately alleged impairment because the defendant's malware caused "degraded computer performance." 2015 U.S. Dist. LEXIS 110145, at *27. Plaintiff alleges no similar impairment here.

### CONCLUSION

The Court should dismiss Plaintiff's Complaint with prejudice.

KING & SPALDING LLP

By: */s/ Ashley C. Parrish*

---

[27] *Satterfield* held *no special relationship* existed between a decedent on whose behalf the suit was brought and the defendant because no contractual language created such a relationship. 2023 U.S. Dist. LEXIS 85081, at *3, *6. *Satterfield* did not involve or endorse a special relationship based on the defendant's contract with an independent third-party tortfeasor. *Durden v. United States*, 736 F.3d 296, 305 (4th Cir. 2013), also rejected a special relationship under North Carolina law.

DATED: October 18, 2023

KING & SPALDING LLP
ASHLEY C. PARRISH (Bar No. 43089)
aparrish@kslaw.com
EDMUND POWER (Bar No. 65841)
epower@kslaw.com
KING & SPALDING LLP
1700 Washington Ave., NW, Suite 900
Washington, DC 20006
Telephone:     (202) 737-0500
Facsimile:     (202) 626-3737

JOSEPH N. AKROTIRIANAKIS (pro hac vice)
jakro@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone:     (213) 443-4355
Facsimile:     (213) 443-4310

*Attorneys for Defendants NSO GROUP TECHS.
LTD. and Q CYBER TECHS. LTD.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18 2023, I electronically filed the foregoing sealed document with the Clerk of Court using the CM/ECF system and will this day serve the same on Plaintiff's counsel of record at the email addresses listed below:

Annie Elizabeth Kouba (SC-NA)
akouba@motleyrice.com
Charles Ross Heyl (SC-NA)
rheyl@motleyrice.com
Motley Rice LLC
28 Bridgeside Blvd
Mt. Pleasant, SC 29464

Michael Jon Pendell (CT-NA)
mpendell@motleyrice.com
Motley Rice LLC
One Corporate Center, 20 Church St. 17 Flr
Hartford, CT 06103
Steven T. Webster
swebster@websterbook.com
Webster Book LLP
300 N Washington Street Suite 404
Alexandria, VA 22314

KING & SPALDING LLP

By: */s/ Ashley C. Parrish*

1